### J. F. G. SPEARS and wife *v.* R. L. SNELL.

Battle's Revisal, chap. 5, sec. 3 provides: "The Judges of Probate in their respective counties shall bind out as apprentices," all orphans whose estates are of so small value, that no person will educate and maintain them for the profits thereof.

*Therefore,* where the uncle of an orphan was, upon petition, without notice to his mother, appointed guardian, and subsequently the mother, who had again married, filed a petition praying that the order of appointment be revoked and that she be appointed guardian; and upon the hearing it appeared that the orphan's estate was very small, and neither of the parties offered to maintain and educate him for the profits thereof: *It was held,* that the court below erred in revoking said order and appointing the petitioner guardian, upon her filing bond as required by the court; and that the orphan should have been bound out as an apprentice.

The Probate Court of the county in which such orphan has acquired a settlement has jurisdiction of the proceeding, which should be entitled *In re* A. B. &c.

The Probate Judge had authority and ought, in the exercise of a legal discretion, upon the application of the step-father, acting in the name of his wife, made within a reasonable time, to have revoked the order appointing the uncle guardian, without notice to the mother, and heard the same *de novo.*

The boy was a competent witness, and ought to have been examined in that character, and his feelings and wishes ought to be allowed serious consideration by the court, in the exercise of its discretion as to the person to whose control he was to be subjected.

This case was an APPEAL from the decision of his Honor, *Schenck, J.,* affirming his judgment of the Probate Court of

CABARRUS county, appointing the plaintiff guardian of one C. A. Snell, an orphan. The case was heard at Chambers, June 19th, 1875.

The following are the facts, as found by the Probate Judge:

"J. F. G. Spears and his wife, Margaret, applied to the court, upon affidavit, to revoke the letters of guardianship heretofore issued to R. L. Snell, over the person and estate of Cyrus A. Snell, a minor, and to appoint the applicant, Margaret Spears, guardian of said minor. The said Spears and wife are persons of good character. The said Margaret is the mother of Cyrus A. Snell, by a former marriage. Cyrus is in his thirteenth year. He was born at his grandfather's (Elias Snell,) now deceased, and has lived with and been raised by him. That his grandfather died during the year 1874.

Margaret Spears lived with her father-in-law some three years after the birth of her said child, when she went to live with her father, leaving the child with his grandfather at the request of the grandfather, who begged that he might keep him.

J. F. G. Spears intermarried with Margaret Spears about seven years since, and after her marriage she applied for her son, but the old man persuaded her to let him keep him. The said Spears and his wife own very little personal property, and no real estate. They have three children. Spears is in debt.

The defendant, Robert L. Snell, is a man of good character, is the owner of about $1,200 worth of real estate, and is in comfortable circumstances, is a resident of this county. He resided with his father up to the time of his death, and managed his affairs. Said Robert Snell sent the said Cyrus to school for six months, and is much devoted to him. That said Robert has been married for ten years, and has no children.

After the death of his father, Spears and his wife went to the defendant for the minor, and the defendant asked the child if he desired to go with them, when he cried and said he did not. The defendant thereupon refused to allow the

plaintiffs to take him without his consent. The defendant applied to this court for the guardianship of said child, without giving notice to his mother.

Since the commencement of this proceeding, the plaintiff, Spears, stated that he wanted the boy to work for him, but that he was angry at the time. He said the plaintiff, Margaret, stated that she thought it best for the child if he were to remain with his uncle Robert.

The plaintiffs live in the county of Mecklenburg, having moved there two years since.

The following is the affidavit upon which the letters were granted to the defendant, and the court finds that the facts therein alleged, are true:

Applicant R. L. Snell makes oath that he is the uncle of said minor; that said minor is in his thirteenth year; that said minor has been living with applicant all his life; that said minor's father is dead and his mother is married again, and is living in another county; that said minor has an estate of about two hundred dollars.

The defendant proposed to examine the minor, Cyrus, as a witness, when the plaintiff objected on the ground that it was against the policy of the law. The court sustained the objection, and the defendant excepted.

Upon the foregoing facts, it is the opinion of the court that the mother is entitled to the guardianship, and that as the letters were granted without notice to her, it is ordered that the said letters of guardianship granted to R. L. Snell on the 4th day of August, 1874, be revoked, and that letters of guardianship of the person and property of the said Cyrus A. Snell, a minor, be granted to Margaret Spears upon her entering into bond, in the sum of $500, with justified sureties.

From the judgment of the court, the defendant appealed to the Superior Court.

The case was heard on appeal by his Honor, Judge *Schenck,* at Chambers, in Charlotte, on January 3d, at 1876, when the

following judgment was rendered; that the judgment of the Probate Court revoking the letters of guardianship heretofore issued to the defendant as guardian of the person and estate of Cyrus A. Snell, be affirmed.

And adjudged further : That Margaret Spears, the mother of said Cyrus A. Snell, is primarily entitled to the guardianship of the person and estate of said Cyrus, and the Probate Court of the proper county will appoint her accordingly, on her giving bond and security required by law.

From the judgment of the Superior Court, the defendant appealed.

*Montgomery,* for the appellant.
*Barringer,* contra.

PEARSON, C. J. This is a proceeding concerning the appointment of a guardian for Cyrus A. Snell, an infant of the age of thirteen years.

We think there is error in the conclusion of his Honor upon the facts found, (which the reporter will set out,) and feel confident that he would have given the *uncle* of the boy a right to the custody and control of his person rather than the *step-father,* which is the effect of the order giving it to the mother, had not his Honor felt cramped by his opinion that in law the mother had a *primary right.* Herein he erred, and by this he was misled. In fact, he and the Judge of Probate and the counsel of both parties, altogether misconceived the case.

The boy had no *estate* to be committed with his person to the charge of a guardian; he had nothing but his *body* to be put, by indentures of apprenticeship, into the keeping of some fit person who would undertake to educate him and give him a freedom suit and such other more favorable terms as the Judge of Probate, acting in his behalf, could induce the master to agree to.

In this contest between the step-father and the uncle, the interest of the boy seems to have been altogether overlooked. Neither of the contesting parties offered "to educate and maintain the boy for the profits of his estate." Battle's Revisal, chap. 5, sec. 3. (1.) So the boy ought to have been bound as an apprentice. We would then have had the indentures which secure to him maintenance and an education; true, to a very limited extent; but "half a loaf is better than no bread." *Our boy*, (I emphasize this, for the courts are the general guardians of all orphans,) is delivered to his step-father. The poor fellow, after serving until he arrives at the age of twenty-one, will have nothing to look to except a bond, in the penalty of $300, with condition properly to manage and account for his estate as guardian. See order of Probate Judge, which is affirmed by his Honor, leaving it indefinite as to the *proper county* in which the bond should be given.

We have said enough to dispose of the matter; but as it will go back for final action, it is proper to give our opinion upon the several questions made on the argument before us.

1. We think the Probate Judge of the county of Cabarrus has jurisdiction of the matter, which should be entitled "*In re* Cyrus A. Snell," so as to make him the prominent figure, and let his step-father, acting in the name of his mother and his uncle, intervene as secondary characters. Cyrus A. Snell was born in the county of Cabarrus, and has lived there ever since. His mother, supposing her to have any claim to the custody of his person after the age of nineteen, (three years,) had surrendered her claim to the boy's grand-father, who lived in the county of Cabarrus, and in this manner the boy had acquired *a settlement* in that county of which it was not in the power of the mother to deprive him, and fix his settlement in the county of Mecklenburg, simply by the fact of her moving into the latter county, especially after she had subjected herself to the control of a second husband. Suppose, by accident or disease, the boy had become decrepid and a county

charge, could it be supposed, for a moment, that the accident of her going with her second husband to live in the county of Mecklenburg, when her husband had no homestead or other fixed estate, would charge that county with his maintenance, to the relief of the county of Cabarrus, where he was born and raised and in which he had acquired a settlement?

2. We think it clear, that the Judge of Probate, finding he had upon the application of the uncle, improvidently granted to him "letters of guardianship," as styled in the record, without notice to the mother, of whose existence and residence the application informed him, had power and ought, in the exercise ef a legal discretion, upon the application of the step-father, acting in the name of his wife, made within reasonable time, to have called in the letters of guardianship, and heard the matter *de novo*, when all sides could have a showing.

3. We think the boy was a competent witness, and ought to have been examined in that character. Indeed, we think, being the party mainly concerned, he had a right to make a statement to the court as to his feelings and wishes upon the matter, and that this ought to have been allowed serious consideration by the court, in the exercise of its discretion, as to the person to whose control he was to be subjected.

4. It is not necessary to decide whether a mother upon the death of her husband is under a legal obligation to support her child after the age of nineteen, and is entitled to his services, for in this case, admitting that the mother is *primarily entitled*, there are special circumstances to induce the court in the exercise of a legal discretion, to decide that the boy shall remain with his uncle, with an undertaking for maintenance and education.

1. The boy during a long residence in the family of his grandfather and uncle, has formed attachments and associations which he is unwilling to sever. At the age of 13, a minor has a right to have his wishes and feelings taken into consideratson, whether in the choice of a master as an apprentice,

or of a guardian to whom *his estate* and person are to be committed, or of a friend who, without respect to the want of an estate, will undertake to provide for his maintenance and education, to prevent his being put out as an apprentice, as in our case.

2. The mother had separated from the child and subjected herself to the control of a second husband, thus putting it out of her power to support the child without subjecting him to the control of a step-father, which she had no right to do. Consequently she was no longer entitled to the services of the child, and she agrees that it is better for the child to remain with his uncle.

3. The uncle is a man of substance, and offers to provide for the maintenance and education of the boy.

4. " The step-father " is un ler no leg il obligation to support the boy, and consequently is not entitled to his services, to say nothing of the fact that the step-father is a man of small estate, has no land or fixed residence, and moves from place to place as a tenant or cropper.

These and the other facts of the case, show beyond all question, that it is for the interest of the boy to remain with his uncle, and in the absence of any positive right, either in the mother or step-father, the court below, in the exercise of its legal discretion, should so order.

This opinion will be certified, to the end that proceedings may be had in the court below in conformity thereto.

PER CURIAM.                              Judgment accordingly.