ELIZABETH D. SMITH, petitioner,

*v.*

HAROLD W. SMITH, defendant.

Decided January 17th, 1939.

MATTHEWS, A. M.

The petitioner, Elizabeth D. Brown, formerly Elizabeth D. Smith, seeks the custody of her infant son, William Dabney Smith, who presently is in the custody of his paternal grandmother, Grace W. Smith.

Elizabeth D. Brown, formerly Elizabeth D. Smith, brought suit for divorce against her husband, Harold W. Smith, on the ground of desertion. The defendant in this divorce proceeding, Harold W. Smith, filed an answer denying his desertion, and a counter-claim for divorce alleging that the aforesaid former Elizabeth D. Smith deserted him.

In December, 1936, a decree *nisi* on the counter-claim of said Harold W. Smith was advised by Advisory Master Matthews, and a final decree was entered on March 15th, 1937.

The decree *nisi* made the following provision as to the custody of William Dabney Smith:

"It is further ordered, adjudged and decreed, that until the further order of this court, the care and custody of William Dabney Smith, the infant child of said marriage, be awarded to the defendant, so long as said defendant continues

to reside at the home of his parents, subject to the right and privilege of the petitioner to visit her said child as she may desire, for such reasonable time as shall not interfere with or prejudice the child's health, welfare, schooling, pleasure or necessary regular habits of life, and provided such visitation be made at times not unduly inconvenient to the said defendant or defendant's mother, and should the petitioner desire to take said child to her home in Nutley, New Jersey, occasionally over the week-end, she may do so by arrangement with the defendant or with defendant's mother."

Harold W. Smith, to whom custody of his said infant son was granted as aforesaid, died in July, 1938.

Elizabeth D. Brown, formerly Elizabeth D. Smith, now petitions this court to give her the custody of the aforesaid infant son who has remained with his paternal grandmother, Grace W. Smith, since the death of his father.

At a hearing held on this petition for custody, and answer filed to said petition, the following pertinent facts of testimony were disclosed:

William Dabney Smith, the infant whose custody is sought by the petitioner, his mother, was born on March 6th, 1928, and is presently approximately ten years and eight months of age. He has lived at the home of Grace W. Smith and her husband, his paternal grandparents, since his birth. His father, deceased in July, 1938, and his mother, the petitioner, lived with him at the aforesaid grandparents' home until September, 1934, when the parents separated, and his father lived with him at the said grandparents' home until the father's death in July, 1938.

It will thus be seen that this boy never had any other home since his birth than with his grandparents.

The testimony at the hearing further showed that in July, 1934, when William Dabney Smith was six years old, the petitioner, his mother, took him on a vacation with her to Gloucester, Virginia. She returned in September, 1934, with the boy, and sent him to the home of his grandparents, his regular home, while she went to her parents' home.

Two years after the petitioner's return from Virginia, to wit, in October, 1936, she instituted suit for divorce against

her husband charging desertion, to which petition for divorce her husband, as aforesaid, filed a counter-claim for divorce on the ground of desertion.

A decree *nisi* was advised for the husband on his counter-claim in December, 1936, which became final on March 15th, 1937.

On March 25th, 1937, ten days after her husband's decree became final, the present petitioner married William T. Brown, whom, she testified, she had started to meet socially in February, 1936, at which time, February, 1936, she testified the said William T. Brown was being sued for divorce by his then wife, in Florida, the said wife obtaining her decree from Brown in June or July, 1936.

The testimony further shows that the petitioner's present husband, William T. Brown, is obligated under his former wife's decree of divorce to pay to her twenty dollars ($20) a week for the support of their two minor children, a boy eight years old, and a girl six years old; that the said former wife lives with the two children aforesaid in Oceanport, New Jersey, and that the said William T. Brown is a bond salesman who has a drawing account of sixty dollars ($60) a week, and that he makes as high as forty dollars ($40) a week in addition to his drawing account, depending on business conditions.

The petitioner further testified that she and her present husband occupy an apartment consisting of one big living room which is also used as a bedroom, a dinette, and a kitchen. She said that if she got custody of her son they would move from those quarters, for which they pay forty dollars ($40) a month rent. She testified that she had taken care of her child while she lived at the grandparents' home, and that while she has never been refused permission to see her son since he was given by the decree *nisi* to his father, nor since the father died, nevertheless on a few occasions she had difficulty in seeing him at the time she wanted to do so because of his, the child's engagements to go swimming, or for some other child's pleasure or engagement cause.

On cross-examination the petitioner admitted that the child had called up his grandparents and asked them to come for

him to his mother's home on a few week-ends because he was so unhappy where his mother lived.

The testimony of the paternal grandmother was in direct contradiction of the petitioner as to petitioner's care and concern for her son. The grandmother, Mrs. Grace Smith, testified that the boy had a nurse until he was four years old, and during those years his mother gave him very little care, and that this lack of care continued after the nurse was dispensed with; that the child's mother would go out and remain out late at night and sometimes would stay away all night, without asking anyone to look after the boy, and that she did exactly as she pleased, with very little consideration for the boy, and that the grandmother had to look after the boy.

The grandmother further testified that her husband, the boy's grandfather, gave the petitioner the opportunity, the spring before she deserted her husband, to take the boy to Carteret Academy, a private school, for the spring term, but the mother did not do so, though the child was of school age; that she, the grandmother, started the boy in public school the following fall, but that the boy was very nervous, and she took him to Carteret Academy where he has done wonderfully well, and where he attends school at present, the granmother taking him to and from school.

The grandmother's testimony in general showed that she has been the real mother to this boy, not only prior to the petitioner's desertion of her husband, but since then. In answer to a question on cross-examination, "You think you can substitute, as grandmother, for the real mother for the child?" Mrs. Grace Smith replied, "I do. I think that child loves me more than anyone else in the world. * * * The child has loved me without my doing anything about it. * * *" When further asked about the mother having custody of the child, the grandmother replied, "I think it would ruin the child's health for life."

The testimony further shows that Mrs. Grace Smith is sixty-seven years old, and that her husband is seventy. Both of the grandparents were before the court and both are healthy looking people who do not appear to be the ages they are. They live in a private one-family house at No. 260

Harrison street, East Orange, New Jersey, with a son thirty-five years old. The house is a fifteen-room dwelling with garage. The Smiths have three in help.

In addition to the testimony of the witnesses which I have summarized above, the court had the benefit of the testimony of the child, William Dabney Smith. The child's testimony clearly revealed that not only is he happy in his present home, but that he "loves his grandmother best," as he put it, and that he does not under any circumstances want to be taken from the only home he has known all his life. His tears on the stand and his veritable shaking with fear at every question intimating his being taken from his present home, clearly indicated that his happiness and his health depend upon his remaining with his grandparents.

From all the testimony in the case, and from my observation of the witnesses on the stand, it seems to me that the custody of this child should be given to the grandmother, Mrs. Grace Smith, with whom the child has lived since birth.

As was said by the court of errors and appeals in *Richards* v. *Collins, 45 N. J. Eq. 283* (at *p. 287*):

"The court will not regard the parental right as controlling, when to do so would imperil the personal safety, morals, health or happiness of the child. In determining this delicate and often difficult judgment, the court looks at the character, condition, habits and other surroundings of claimants.

"In resolving the general question of what will best subserve the interest and happiness of the child, its own wish and choice may be consulted and given weight, if it be of an age and capacity to form a rational judgment. There is no fixed age which capacitates such choice. It depends upon the extent of its mental development.

"The wishes of children of sufficient capacity to form them are given especial consideration, where the parents have for a length of time voluntarily allowed their children to live in the family of others, and thus form home associations and ties of affection for those having their care and nurture, and when it would mar the happiness of the children to sever such ties."

The child in the case *sub judice* appears to be of more than ordinary intelligence for his years, and certainly of sufficient capacity to form the wish and desire, repeatedly expressed by him on the stand, of living with his grandmother. It would in my opinion not only mar the happiness of this boy to take him from the only home he has ever known, but it would make the child a nervous wreck.

Moreover, the boy's mother is now married to another man who has two children to support. They are married but a short time and there is no present telling what permanency there may be to this reconstructed home. To take this child from the grandparents and put him into such a reconstructed home would, to my mind, at his age of immediate pre-adolescence, not only ignore the rights which this child has, it might also have a deleterious effect upon his character and outlook on life.

From all of the testimony and circumstances of this case I am of the opinion that the infant, William Dabney Smith, should be allowed to remain in the custody of his grandmother, Grace Smith. Provision should be made for fulsome visitation by the petitioner with her son.