IN THE MATTER OF: GUY A. GIBBONS, JR.

(Filed 11 December, 1957)

1. **Infants § 22—**

    While parents have a strict legal right to custody of their children as against strangers, the parent's right to custody must yield when the circumstances are such that the custody of the parent will imperil the infant's personal safety, morals or health so that the best interest of the child will be served by awarding its custody to another.

2. **Same—In determining right to custody as between surviving parent and persons to whom parent voluntarily gave custody of child, the best interest of the child is the paramount consideration.**

    The findings of fact disclosed that respondent, the surviving parent by adoption of the infant in question, permitted the child for a period of almost five years to live with petitioner and his wife, that during this period respondent made very limited contributions to the child's support, that petitioner requested respondent to take the child because of apprehension that a later separation would be too painful, that respondent refused to do so, but that later, after respondent's second marriage, respondent forcibly took possession of the child from a Sunday School Room. The court made no finding as to whether the infant wished to live with the petitioner or respondent. The court, upon its conclusion that the parent could not be deprived of the right to its custody unless the welfare of the child clearly required it, awarded the custody to respondent. *Held:* It appearing that the court failed to give sufficient consideration to the wishes of the child and found the facts under a misapprehension of the applicable law that the welfare of the child is the paramount consideration under the circumstances disclosed, the cause must be remanded.

**3. Appeal and Error § 55—**

Where the rulings of the court are based on facts found under a misapprehension of the applicable law, the cause must be remanded.

BOBBITT, J., dissenting.

RODMAN, J., concurs in dissent.

APPEAL by petitioner Richard Bright from *Carr, J.,* June Civil Term 1957 of WAKE.

Proceeding to determine the custody of Guy A. Gibbons, Jr., who was born 26 April 1947.

From a judgment awarding the custody of the boy to Guy A. Gibbons, Sr., with a provision that Guy A. Gibbons, Sr. is not required to permit the boy to visit Mr. and Mrs. Richard Bright, the petitioner Richard Bright appeals.

*Emanuel & Emanuel for Petitioner, Appellant.*
*Manning & Fulton for Respondent, Appellee.*

PARKER, J. This proceeding was instituted in the Domestic Relations Court of Raleigh and Wake County on 6 August 1954 by petition of Richard Bright, who in his petition alleged that Guy A. Gibbons, Jr., an infant under 16 years of age, was a neglected child under such improper or insufficient control as to endanger his health and general welfare, and further alleged that his custody is subject to controversy. From a judgment adverse to petitioner, he appealed to the Superior Court of Wake County. In the Superior Court Richard Bright, by leave of court, filed an amended petition, and Guy A. Gibbons, Sr. filed an answer to the amended petition. The proceeding was heard at the March Civil Term 1956 by Hobgood, J., on evidence offered by petitioner and respondent, who made 25 findings of fact and 4 conclusions of law, and awarded the custody of the boy to the respondent Guy A. Gibbons, Sr. Petitioner excepted to the findings of fact and conclusions of law, and appealed from the judgment to the Supreme Court. Upon the appeal, *In re Gibbons,* 245 N.C. 24, 95 S.E. 2d 85, this Court held that Hobgood, J. "committed error in receiving testimony from witnesses without affording petitioner an opportunity to be present and know what evidence was offered."

Judge Carr heard the proceeding on voluminous evidence offered by the petitioner and respondent, which evidence was in sharp conflict, and made findings of fact and conclusions of law. His judgment contains this recital:

"There were certain findings of fact set out in the judgment of Judge Hobgood, which appear in the record, and this Court finds certain facts to be as set out in the Findings of Fact Nos. 1 to 9, inclusive, and 10 to 21, inclusive, of the judgment of Judge Hobgood, which Findings of Fact are

referred to and made a part of the Findings of Fact in this Judgment for all intents and purposes as if they were set out herein at length."

Judge Carr then made further findings of fact. Judge Carr's findings of fact and conclusions of law essential to a decision of the questions presented on this appeal are summarized as follows:

A SUMMARY OF JUDGE HOBGOOD'S FINDINGS OF FACT NOS. 1 TO 21, INCLUSIVE:

Guy A. Gibbons, Jr. was born 26 April 1947. Proceedings to adopt this boy were instituted by Guy A. Gibbons, Sr. and his wife, Rebecca L. Gibbons, in the Superior Court of Wake County on 23 February 1948, and a final order of adoption was entered 30 April 1949. Rebecca L. Gibbons died in June 1949. Respondent then placed this boy with Ruth Lindley until August 1949. Respondent then placed the child in the home of Mrs. Ralph Turner. About two weeks later Mrs. Turner pursuant to a direction of the respondent placed the boy in September 1949 with the petitioner Richard Bright, in whose home the boy remained until 1 August 1954, except for short visits with the respondent. During this period of almost five years respondent made the following contributions for the support of the boy: $110.00 in 1949, $140.00 in 1950, $20.00 in 1951, and nothing in 1952, 1953 and 1954. However, respondent paid certain medical bills for the boy, and furnished him certain small miscellaneous items of clothing and presents. During this five-year period respondent visited the boy in the Bright home, and on a few occasions had the boy with him for brief periods of time. During this five-year period the boy became very closely attached to Richard Bright and his wife, considering them as his parents. In the early part of 1950 Mr. and Mrs. Bright requested respondent to take the child, but he refused to do so, and indicated at the time that he desired that the child should remain permanently with the Brights.

On 6 September 1952 respondent married Harriet Emiline Scott. In the spring of 1954 respondent requested the Brights to let him have the boy, and upon their refusal to do so, he filed a petition in the Domestic Relations Court of Wake County. His petition was dismissed. Thereafter, on Sunday morning, 1 August 1954, respondent accompanied by a man went to the New Hope Baptist Church, which is in Wake County near the Bright home, where Guy A. Gibbons, Jr. was attending Sunday School. Respondent went into the Sunday School Room, and forcibly took the boy away with him in spite of the boy's screaming, pro-

testing and seeking to escape. For this conduct respondent was arrested on a warrant charging him with disturbing religious worship, convicted, and fined $100.00 and the costs.

Mr. and Mrs. Richard Bright are people of excellent character. He is a professor in the Chemical Engineering Department of State College. He and his wife are active in the church, educational, and community life of their neighborhood. They own their home. They have no children, and say they plan to leave their home to Guy A. Gibbons, Jr. at their death.

Mrs. Harriet Scott Gibbons is a person of excellent character, and is an employee in Raleigh of the Federal Government. She and respondent are regular attendants at a local Methodist Church, and take the boy with them.

Guy A. Gibbons, Sr. is not a person of bad character. He operates a service station and a small nursery. From the death of his first wife until a few months ago he was addicted to the excessive use of intoxicating liquor to such an extent that he became frequently intoxicated. He became a member of Alcoholics Anonymous. That he does not appear to have any vices except an addiction to excessive use of alcohol.

The home life of the boy while he lived with the Brights was happy and cheerful, and they took particular pains to see that he appeared neat, clean, and saw to it that he was given proper medical attention at all times.

JUDGE CARR'S FURTHER FINDINGS OF FACT:

The Bright and the Gibbons families differ in their methods of control of the boy. The Brights are inclined to leniency, and the Gibbons to strictness almost bordering on severity. Consequently, the child thinks the Brights love him more, and he is very fond of them. The boy is not a neglected child, and respondent has not abandoned him. Both the Brights and the Gibbons families are fit and proper persons to have the custody of the boy. This is Judge Carr's 4th finding of further facts:

"Guy A. Gibbons at one time, between the death of his first wife and his remarriage, was such an excessive user of alcohol that he was unfit at that time to have the custody of said child. However, he, since his remarriage, has made remarkable progress in controlling his habits in the excessive use of alcohol but has not reached the point that he does not occasionally get under the influence of intoxicants and was arrested in March, 1957, on a charge of operating a motor vehicle under the influence of intoxicating liquor, was found guilty of the charge in Recorder's Court of Wendell, N. C., and has appealed said conviction to the Superior Court of Wake County and a jury has not heard and passed on his appeal."

The Brights in 1950 realizing that they were becoming attached

to the boy requested respondent to take him, but he declined to do so. After respondent's remarriage in 1952 his conduct was such as to give the Brights notice that he would ultimately ask for the child. This contest for the custody of the boy has created a situation whereby the boy's best interest requires that he be placed in the custody of one or the other family, and that the order should not provide for any visitation of the child by the family not awarded his custody.

JUDGE CARR'S CONCLUSIONS OF LAW:

This is "a contest between one who has the legal custody, and one who does not, and the rule of law in such cases is that it must appear that the welfare of the child clearly requires that he be taken away from the one who has the legal custody." Upon the foregoing facts the court is of the opinion that it does not appear that the best interests of the child clearly require that he be taken away from respondent, who has legally adopted him.

Whereupon, Judge Carr signed a judgment awarding the custody of the child to Guy A. Gibbons, Sr., and provided that he is not required to permit the boy to visit Mr. and Mrs. Richard Bright.

Judge Carr concluded his judgment with this language, except for a final paragraph as to the payment of costs:

"The decision has been all the more hard to make for the reason that Guy A. Gibbons, Sr. has not made the progress in the control of his habit in the use of alcohol that is to be desired when one applies for the permanent custody of a child.

"While this judgment is a final judgment as to the matter and things that have occurred prior to the date of this judgment, it is ordered that the cause be retained for motions to have the same modified for any good reason and particularly any deterioration in the drinking habits of Guy A. Gibbons, Sr. that might justify the modification. The Court has found it difficult to get the full facts in respect to the extent of Mr. Gibbons' drinking in recent months. That the Court finds that Deputy Sheriff O. B. Weatherspoon is an unbiased, disinterested officer, totally disconnected with the parties in this case and the Court requests that he act as an officer of the Court on a Special Mission during the next twelve months and that he on occasions both night and day, when Mr. Gibbons is least expecting him, drop by Mr. Gibbons' place of business and home, and in a friendly manner chat briefly with him, to the end that he may give evidence as to his condition with respect to drink, if such is needed.

"Notice is hereby given to Mr. and Mrs. Gibbons that any lack of cooperation with Mr. Weatherspoon in this respect

may be used against Mr. Gibbons in any subsequent inquiry into his drinking habits; if for any reason at any time Mr. Weatherspoon cannot act in this capacity, a substitute may be named in his stead by the Judge regularly holding the courts of the Tenth Judicial District or the Resident Judge of said District."

G.S. 48-23 provides that "the final order" (of adoption) "forthwith shall establish the relationship of parent and child between the petitioner and child. . . ."

This Court said in *James v. Pretlow,* 242 N.C. 102, 86 S.E. 2d 759: "Where one parent is dead, the surviving parent has a natural and legal right to the custody and control of their minor children. This right is not absolute, and it may be interfered with or denied but only for the most substantial and sufficient reasons, and is subject to judicial control only when the interests and welfare of the children clearly require it."

In the former appeal of this case the Court said: "The crucial question in this case, as in all cases involving the custody of an infant is: What, in fact, is for the best interests of the child? Schenck, J., in *Tyner v. Tyner,* 206 N.C. 776, 175 S.E. 144, said: 'In determining the custody of children, their welfare is the paramount consideration. Even parental love must yield to the claims of another, if, after due judicial investigation, it is found that the best interest of the children is subserved thereby.' "

It is an entire mistake to suppose the court is at all events bound to deliver over a child to his father, or that the latter has an absolute vested right in the child. Doubtless, parents have a strict legal right to have the custody of their infant children as against strangers. However, courts will not regard this parental legal right against strangers as controlling, when circumstances connected with the present and prospective welfare of the child clearly exist to overcome it, or when to enforce such legal right will imperil the personal safety, morals, or health of the child.

By stipulation of the parties Judge Carr privately examined Guy A. Gibbons, Jr. in his chambers; neither the parties, nor their counsel were present. What he said to Judge Carr is not in the record. The stipulation further provided that Judge Carr should also privately examine certain notes written by the boy to Mr. and Mrs. Bright, when he was in respondent's custody after having been forcibly taken by respondent from the New Hope Baptist Church Sunday School on Sunday morning, 1 August 1954. Judge Carr said: "They" (the notes) "may be examined by the court for the purpose of determining whether or not any evidence in them that would tend to corroborate or contradict what the child told the court." Judge Carr also said:

"The question I am concerned with now is whether or not this is a case where the Court can apply the principle that

IN RE GIBBONS.

is usually applied, namely, what is the best interest of the child? Now, in cases where there is an argument between husband and wife who separate, and either one of them is entitled to the custody, the Court has to decide between the two as to which one shall have the custody. Most of the time that question does arise, and is the lodestar that guides the Court's decision as between husband and wife—which one is going to have the child most of the time, the one will have it according to the rule which can care for the child in such a way as will serve the best interest of the child. I have some difficulty in my own thinking as to whether or not we can apply that rule here which is in fact is in the case."

Counsel for petitioner offered these notes in evidence. Judge Carr told petitioner's counsel that he had identified these notes sufficiently and excluded them. Petitioner excepted to the rejection of these notes and assigns it as error. The record shows that there were thirteen of these notes, but their contents are not in the record.

Judge Carr made no findings of fact as to whether this boy wished to live with the Brights or the respondent.

However, he did make these findings of fact: This boy was born 26 April 1947. In September 1949, when he was two and one-half years old, he was placed by direction of respondent in the home of Mr. and Mrs. Richard Bright. The Brights in 1950, realizing that they were becoming attached to the boy, requested respondent to take him, but he declined to do so and indicated at the time that he desired that the boy should remain permanently with the Brights. The inference from this finding is plain that the Brights desired to spare themselves and the boy the heartbreak of a separation, if respondent later wanted to take the boy. Mr. and Mrs. Bright are people of excellent character, and he holds a responsible place at State College. They own their home, and are active in the church, and in the educational and community life of their neighborhood. They have no children of their own. From the time this boy was two and one-half years old until 1 August 1954, when he was over seven years old, respondent voluntarily allowed this boy to live in the Bright home. During these five years the home life of this boy with the Brights was happy and cheerful, he was well cared for, and he became greatly attached to the Brights, considering them as his father and mother. That the Brights returned his love is manifest by their efforts in this proceeding to gain his custody, and from the finding of fact that they say they plan to leave him their home at their death. During this five-year period respondent made meager contributions to the support of this boy, and had the boy with him on a few occasions for brief periods of time. On 1 August 1954 respondent went into the Sunday School Room of the

New Hope Baptist Church, and carried this boy away with him, in spite of his screaming, protests and efforts to escape.

It is significant that Judge Carr made no finding of fact that this boy had any love for respondent. Respondent in his affidavit, which he introduced in evidence, said: "Your affiant went to the New Hope Baptist Church to see his son, and when the child cried at the sight of him, he picked up his child and took him away." Testifying before Judge Carr, he said: "He didn't cry at the time I picked him up. He says, 'I don't want to go.' He was scared."

Respondent by his voluntary act permitted this boy from the time he was two and one-half years old until he was over seven years of age to live with Mr. and Mrs. Bright, where the sweet tendrils of childhood have first clung to all he knows of home.

The wishes of a child of sufficient mental capacity to form them, as opposed to the legal right of a parent, however moral a man may be, are given especial consideration where the surviving parent has voluntarily permitted the child to remain continuously in the custody of others in their home, and has taken little interest in it, thereby substituting such others in his own place, so that they stand in *loco parentis* to the child, and continuing this condition of affairs for so long a time that the love and affection of the child and the foster parents have become mutually engaged, to the extent that a severance of this relationship would tear the heart of the child, and mar his happiness. *Tucker v. Tucker,* 207 Ark. 359, 180 S.W. 2d 571; *Marshall v. Reams,* 32 Fla. 499, 14 So. 95, 37 Am. St. Rep. 118; *Hurtt v. Conklin,* 328 Ill. App. 314, 65 N.E. 2d 610; *Bridges v. Matthews,* 276 Ky. 59, 122 S.W. 2d 1021; *Merchant v. Bussell,* 139 Me. 118, 27 A. 2d 816; *Forbes v. Warren,* 184 Miss. 526, 186 So. 325; *Richards v. Collins,* 45 N.J. Eq. 283, 17 A. 831, 14 Am. St. Rep. 726; *Smith v. Smith,* 17 N.J. Misc. 194, 7 A. 2d 829, affirmed 125 N.J. Eq. 384, 5 A. 2d 774; *Ex parte Sidle,* 31 N.D. 405, 154 N.W. 277; *Black v. May,* 152 Okla. 160, 4 P. 2d 17; 39 Am. Jur., Parent and Child, p. 610; 20 R.C.L., Parent and Child, pp. 602-603.

The case of *Merchant v. Bussell, supra,* was a *habeas corpus* proceeding by Francis O. Merchant against Margaret Bussell to recover custody of petitioner's minor daughter. The appeal was to review an order dismissing the writ, and ordering the child restored to the custody of respondent, heard upon petitioner's exceptions. The Maine Supreme Court overruled the exceptions, and closed its opinion with this language:

> "This petitioner for a period of more than four years showed not much more than a formal interest in his child. Circumstances were such that perhaps this was inevitable. He knew that the child was well cared for and was content to let the natural ties which bound him to his offspring grow

very tenuous. Since the death of his wife there is little evidence that he has had any great yearning to have his child with him, to sacrifice for her, or to lavish on her the affection which would have meant so much to her in her tender years. Instead he surrendered this high privilege to the grandmother, who with the help of her unmarried daughters has given to this child the same devotion as it would have received from its own mother. Now having permitted all this to happen he claims the right, because he is the father, to sever the ties which bind this child to the respondent. In this instance the welfare of the child is paramount. The dictates of humanity must prevail over the whims and caprice of a parent."

The case of *Harris v. Harris*, 115 N.C. 587, 20 S.E. 187, involved the custody of a nine and one-half-year old child. The Court said: "What the preferences of the child were is not found as a fact, though this has weight always with a court in such cases according to the age and intelligence of the child."

*Spears v. Snell*, 74 N.C. 210, (1876) was a proceeding concerning the appointment of a guardian for Cyrus A. Snell, an infant of the age of thirteen years. The contest was between the stepfather and mother of the boy and the boy's uncle. *Feme* petitioner is the mother of Cyrus A. Snell by a former marriage. The boy was born at his paternal grandfather's, and has lived with him and been raised by him, until his death in 1874. The boy's mother lived with her father-in-law some three years after the birth of her child, when she went to live with her father, leaving the boy with his grandfather at the grandfather's request. The male petitioner married the *feme* petitioner about seven years since, and after her marriage she applied for her son, but the grandfather persuaded her to let him keep him. Petitioners are persons of good character. The respondent, the boy's uncle, is a man of good character. He lived with his father up to the time of his death, and managed his affairs. The respondent is much devoted to the boy. He has been married for ten years, and has no children. After the grandfather's death, petitioners went to the respondent for the boy, and the respondent asked the boy if he desired to go with them, when the boy cried, and said he did not. Respondent proposed to examine the boy in court as a witness, when petitioners objected on the ground that it was against the policy of the law. The Court sustained the objection, and respondent excepted. The Court rendered judgment that the mother is primarily entitled to the guardianship of the person and estate of her son, and ordered the Probate Court to appoint her accordingly.

Respondent appealed to the Supreme Court. The opinion of the Court was written by Pearson, C. J., who in reversing the judg-

ment below said: "We think there is error in the conclusion of his Honor upon the facts found (which the reporter will set out) and feel confident that he would have given the *uncle* of the boy a right to the custody and control of his person rather than the *stepfather*, which is the effect of the order giving it to the mother, had not his Honor felt cramped by his opinion that in law the mother had a *primary right*. Herein he erred, and by this he was misled. . . . In this contest between the stepfather and the uncle, the interest of the boy seems to have been altogether overlooked. . . . We think the boy was a competent witness, and ought to have been examined in that character. Indeed, we think, being the party mainly concerned, he had a right to make a statement to the Court as to his feelings and wishes upon the matter, and this ought to have been allowed serious consideration by the Court, in the exercise of its discretion, as to the person to whose control he was to be subjected. . . . The boy during a long residence in the family of his grandfather and uncle has formed attachments and associations which he is unwilling to sever. At the age of thirteen, a minor has a right to have his wishes and feelings taken into consideration. . . ." The Court expressly adverts to the fact that the stepfather was under no legal obligation to provide for the child, and that the mother wanted him to remain with his uncle. The Court concluded its opinion with this language: "These and the other facts of the case show beyond all question that it is for the interest of the boy to remain with his uncle, and in the absence of any positive right, either in the mother or stepfather, the Court below in the exercise of its legal discretion, should so order."

It is manifest from Judge Carr's findings of fact that he was gravely perturbed over the question as to whether respondent, due to his drinking intoxicating liquor, was a fit and suitable person to have the custody of this boy. This perturbation is further manifested by the request in the conclusion of his judgment that a Deputy Sheriff of Wake County should act as an officer of the court on a Special Mission during the next twelve months to observe respondent's condition with respect to drinking intoxicating liquor.

There is nothing in the findings of fact to indicate that Judge Carr gave any consideration to the wishes of this ten-year old boy as to the person to whose custody he was to be given, though under the facts here the boy, being the party mainly concerned, had a right to have his wishes and feelings taken into especial consideration by the judge in awarding his custody. It seems that the learned Judge felt so "cramped by his opinion that in law" the respondent had a primary right to the custody of the boy, that he overlooked the interest and welfare of the boy. This was error.

In the former appeal of this case Rodman, J., speaking for the Court, said: "The crucial question in this case, as in all cases involving the custody of an infant, is: What, in fact, is for the best interest of the child?" Judge Carr, in his statement quoted above, said he had some difficulty in his thinking as to whether or not he could apply the above quoted principle of law in this proceeding. It would seem that the learned and experienced Judge acted under a misapprehension of law. "Where rulings are made under a misapprehension of the law or the facts, the practice is to vacate such rulings and remand the cause for further proceedings as to justice appertains and the rights of the parties may require." *Calaway v. Harris*, 229 N.C. 117, 47 S.E. 2d 796.

This proceeding must be heard again, so that the evidence can be considered in its true legal light, according to the applicable principles of law.

Error.

BOBBITT, J., dissenting: The former appeal by petitioner was from an order of Judge Hobgood. On sufficient findings of fact, he awarded to Guy A. Gibbons, Sr., respondent, "the custody, care and control and tuition of Guy A. Gibbons, Jr." *In re Gibbons*, 245 N.C. 24, 95 S.E. 2d 85. This order was vacated and the cause remanded for further hearing. Decision was based in part upon the refusal of the court to permit petitioner to examine Guy A. Gibbons, Jr., in open court, and upon the fact, as stated in Judge Hobgood's findings, that the judge, without the consent of petitioner, had held "three conferences in chambers with Guy A. Gibbons, Jr. without either Mr. or Mrs. Bright or Mr. or Mrs. Guy A. Gibbons, Sr. being present, this being done with the view of obtaining full knowledge of the child's problems and attachment with reference to the petitioner and the respondent."

This appeal by petitioner is from an order of Judge Carr who, after extended hearings and full consideration, awarded custody to Guy A. Gibbons, Sr. The parties consented that Judge Carr might confer privately with Guy A. Gibbons, Jr. Neither petitioner nor respondent requested permission to examine Guy A. Gibbons, Jr., in open court. Judge Carr, like Judge Hobgood, had the advantage of impressions derived from personal contacts, observations and conversations. It is significant that both reached the same conclusion.

The established rule is stated by Rodman, J., in opinion on former appeal, as follows: "The findings of fact made by the trial judge, like a jury verdict, conclude the parties and are binding on us when supported by competent evidence received at a properly constituted hearing."

Our function is to determine whether the court below acted under misapprehension of law or failed to apply pertinent legal principles. It is not our function to find facts, thereby resolving

conflicts in evidence. The underlying reason for the rule is that the hearing judge has the opportunity to observe the parties and the witnesses. An appellate court considers only the cold record.

I cannot say whether, had I been in Judge Carr's place, I would have reached the same conclusion. But this is not the responsibility of this Court. Hence, I refrain from observations bearing upon the relative fitness and suitability of petitioner and of respondent. Certainly, there is nothing in the conduct of the Brights that invites censure.

Guy A. Gibbons, Sr., the adoptive father, has the legal responsibility for his adopted son. Nothing else appearing, he has the legal right to custody. While much may be said in favor of the Brights, the fact remains that petitioner has neither legal responsibility for Guy A. Gibbons, Jr., nor legal right to custody.

Thus, Judge Carr was right, in my opinion, when he gave heed to what was said by this Court in *James v. Pretlow,* 242 N.C. 102, 86 S.E. 2d 759, to wit: "Where one parent is dead, the surviving parent has a natural and legal right to the custody and control of their minor children. This right is not absolute, and it may be interfered with or denied but only for the most substantial and sufficient reasons, *and is subject to judicial control only when the interests and welfare of the children clearly require it.*" (Italics added.) I regard this as a correct statement of a sound legal proposition.

Attention is called to these positive findings of fact by Judge Carr:

"1.   The Brights and the Gibbons families differ in their methods of disciplinary control over the child. The Brights are inclined toward leniency and Mr. and Mrs. Gibbons towards strictness almost bordering on severity. Arguments can be made in support of each method. The method of the Brights appeals to the child and causes him to think the Brights love him more generously than Mr. and Mrs. Gibbons. Hence he is very fond of Mr. and Mrs. Bright.

"2.   The child is not a neglected child, as alleged in the petition and the amended petition. The said Guy A. Gibbons, Sr. has not abandoned said child, as alleged in said amended petition.

"3.   Both couples, Mr. and Mrs. Bright and Mr. and Mrs. Gibbons, are fit and proper persons to have the custody of said child.

"4.   (Quoted in opinion of Court.)

"5.   The Brights in 1950, realizing that they were becoming attached to the child, requested Gibbons to take him, but he declined to do so. After Gibbons remarried in 1952, the conduct and attitude of Gibbons and his wife was such as to give the

Brights notice that Gibbons would ultimately ask them to let him have the child and this was made more apparent to the Brights in the year 1953.

"6. The contest between the Bright and Gibbons families in respect to the custody of the child has created a situation whereby the child's best interest requires that for the time being he be placed in the custody of one or the other and that the Order should not provide for any visitation of the child to the one who is not awarded the custody."

Under the caption, "CONCLUSIONS OF LAW," Judge Carr reaches this conclusion: "Upon the foregoing findings of fact the Court is of the opinion that it does not appear that the best interests of the child clearly require that he be taken away from his father, who has duly and legally adopted him and for whom the child was named." The phraseology of this conclusion, which is a composite of fact and of law, follows closely the course indicated by this Court in *James v. Pretlow, supra,* as appropriate where one who has no legal right to custody or legal responsibility for the child seeks to obtain custody from one who has a legal right thereto as well as legal responsibility for the child. The essential meaning of the rule stated in *James v. Pretlow, supra,* is that a parent, who has legal responsibility for his child and who is a fit and proper person to have custody, is entitled to custody unless for the most substantial and sufficient reasons the interests and welfare of the child clearly require that custody be awarded to another.

It is noted that Guy A. Gibbons, Sr., has had custody of Guy A. Gibbons, Jr., since August 1, 1954. It is quite evident that the superior court judges who observed the boy and talked with him did not think he had been harmed by this custody.

Of course, the welfare of Guy A. Gibbons, Jr., and his own wishes, should have been considered by the hearing judge. Nothing appears to indicate that Judge Carr did not consider these matters. Rather, it appears that Judge Carr made his findings and reached his conclusions after making appraisal of *all* relevant factors, including the impressions he gained from personal contacts with the boy. Are we to judge the weight he should have given to each phase of the evidence?

Judge Carr, feeling the weight of his responsibility, made provision that respondent be observed, particularly with reference to drinking intoxicating beverages. This, in my view, should not be interpreted as lack of confidence in his decision, but rather as a means of safeguarding the best interests of the boy if *future events* should require a reconsideration of the cause.

I would affirm the judgment of Judge Carr. But, apart from that, since the cause is remanded for a third superior court hearing, I would make it clear that, upon such further hearing,

the judge should weigh the evidence and find the facts according to his, not our, judgment. My principal concern is that the review of facts appearing in the Court's opinion will be construed as a virtual directive to the next superior court judge to award custody to petitioner. I, for one, have no such thought in mind. As to the facts, these are matters for determination by the superior court judge; and I do not want the next judge to feel "cramped" in respect thereof by what is said by this Court in the opinion filed today.

RODMAN, J., concurs in dissent.