IN THE MATTER OF IRENE PEARL KIMEL.

(Filed 14 December, 1960.)

**1. Habeas Corpus § 4—**

In *habeas corpus* proceedings to determine the right to the custody of a minor child, the findings of fact of the trial court are conclusive when supported by competent evidence.

**2. Habeas Corpus § 3—**

In *habeas corpus* proceedings to determine the right to the custody of a minor child, the burden is upon petitioner to show that, in the

event she is awarded custody of the child, resources for the support and maintenance of the child are or will be available.

**3. Parent and Child § 5:    Bastards § 11—**

The fact that the mother of an illegitimate child consented that the natural father of the child should have its custody, and the fact that she did not seek to obtain custody of the child subsequent to her marriage to a third person until after the death of the father of the child, the child having been maintained and well supported by its father, *is held* insufficient to show that the mother had wilfully abandoned the child so as to forfeit the right to its custody.

**4. Bastards § 11—**

The mother of an illegitimate child, if a suitable person, is ordinarily entitled to the care and custody of the child, even though there be others who are more suitable.

**5. Habeas Corpus § 3:    Infants § 9— Findings held insufficient to support conclusion that best interests of child required awarding its custody to its mother.**

In proceedings by the mother of an illegitimate child to obtain the custody of the child from the widow of the child's father, who had cared for and maintained the child until his death, findings that the person whom the mother had married after the birth of the child is sympathetic with her efforts to obtain its custody and will cooperate with her in maintaining and supporting the child if custody is awarded her, is insufficient to support the conclusion that it is to the best interest of the child that its custody be awarded the mother, and the cause is remanded for further inquiry on the question of whether resources for the support and maintenance of the child are or will be available through petitioner or from the child's separate estate.

PARKER, J., concurring in the result.

APPEAL by respondent from *Fountain, Special Judge,* 25 April Term, 1960, of FORSYTH.

This is a proceeding to have the custody of the minor child, Irene Pearl Kimel, determined. An application for writ of *habeas corpus* was filed in the Superior Court in Forsyth County on 22 April 1960. The writ was issued on 2 May 1960, directing the Sheriff of Forsyth County to serve the writ on the respondent, Ruth Kimel, and to take possession of the minor child, Irene Pearl Kimel, immediately, and to have her before the court at 9:30 a.m. on 5 May 1960, and also requiring the respondent to appear before the court at said time in order that the court might inquire into the matters set forth in the petition. The writ was served on the respondent on 4 May 1960. When the matter came on for hearing, the petitioner and the respondent were represented by counsel.

The filing of a written return to the writ was waived. The petitioner and the respondent offered evidence, and upon the evidence offered, the court found the facts to be as set forth below: (Numbering ours.)

1. "The court finds as a fact that Irene Pearl Kimel is the daughter of the petitioner, Ollie Aungst Kuhlins; that she was born out of wedlock on January 2, 1952, in Canton, Ohio; that the father of Irene Pearl Kimel was Shirley A. Kimel, who at the time of the conception and birth of the minor child was unmarried; that after the birth of Irene Pearl Kimel two written agreements were entered into between the petitioner and Shirley A. Kimel, the father of the child, the first being on October 22, 1955, and the second being on February 9, 1956; that each of said agreements were executed in Canton, Ohio, and each relate to the maintenance, support, care and custody of the minor child."

2. " * * * (T)hat after the birth of the minor child, Shirley Kimel in all respects acknowledged the paternity of the child, and by appropriate proceeding in the courts of Ohio caused the child's name to be changed to Kimel."

3. " * * * (T)hat pursuant to the agreement between the petitioner and Shirley A. Kimel dated the 9th of February 1956, the exclusive care, custody and control of the child was granted by the petitioner to Shirley A. Kimel, and that from that time until his death Shirley Kimel had the complete custody, care and control of the minor child."

4. " * * * (T)hat on December 7, 1957, Shirley A. Kimel married the respondent, Ruth Kimel, and that they lived together as man and wife until the death of Shirley A. Kimel on November 25, 1959; that during that time Irene Pearl Kimel was a member of the household, living therein as a child of Shirley A. Kimel, and was treated by Ruth Kimel as her own child."

5. " * * * (T)hat Irene Pearl Kimel at all times lived in or near Canton, Ohio, until the death of her father on November 25, 1959, and that from the time her father had custody of her and until his death the petitioner did not interfere in any way with the care and custody and control of the child by her father; that immediately after the death of Shirley Kimel the petitioner requested and demanded custody of her minor child from Ruth Kimel, the respondent, who then had the sole custody of said child; that Ruth Kimel refused to deliver the child to her mother, and shortly thereafter learned that the petitioner was about to cause a writ of *habeas corpus* to be issued for the child in the State of Ohio; whereupon, the re-

IN RE KIMEL.

spondent, Ruth Kimel, immediately left the State of Ohio and came to Winston-Salem, Forsyth County, North Carolina, where the relatives of her deceased husband have lived for many years; that one purpose of her departure from Ohio and her removal to North Carolina was to avoid process and hearing on the question of the custody of the child in the State of Ohio; that Ruth Kimel, with the minor child, arrived in Winston-Salem on December 2, 1959, and since that time has lived in a two-room apartment with the minor child and was living on Stratford Road, and was living at that place at the time the writ of *habeas corpus* was served on her."

6. " * * * (T)hat the petitioner was married to Arthur Henry Kuhlins on June 9, 1956, and that she now lives at 1518 Isler Road, N. W., Canton, Ohio, with her husband, in a six-room home owned by them; that she has one male child born of that marriage now less than three years of age."

7. " * * * (T)hat the petitioner has no income of her own but that her husband is employed in a custodial capacity for the Canton School Board in the State of Ohio, and earns $385.00 per month; that the husband of the petitioner knew Irene Pearl Kimel while she was in the care and custody of the petitioner and prior to the marriage of the petitioner and her present husband; that he is aware of the petitioner's efforts to obtain the custody of her child and is sympathetic to her efforts and will cooperate with the petitioner in maintaining, supporting and caring for the minor child if custody is awarded to petitioner."

8. " * * * (T)hat Mrs. Ruth Kimel is a person of excellent character and reputation, who is devoted to the minor child, Irene Pearl Kimel, and is a suitable person to have custody of the child. * * * (T)hat the petitioner is a person of good character and reputation and is a suitable person to have care and custody of the child."

9. " * * * (T)hat it is the wish of Irene Pearl Kimel, now eight years of age, to be permitted to remain in the custody of the respondent, Ruth Kimel, with whom she has lived since December 1957. * * * (T)hat Ruth Kimel is not related to the minor child, Irene Pearl Kimel, except to the extent that she was married to the deceased father of the child."

Upon the foregoing findings of fact the court concluded that it was to the best interest of the minor child that her custody be awarded to her mother, Mrs. Ollie Aungst Kuhlins, the petitioner herein. An order to that effect was entered.

From the foregoing order the respondent appeals, assigning error.

*Blackwell, Blackwell & Canady for petitioner.*

*Averitt, White & Crumpler; James G. White and Leslie G. Frye for respondent.*

DENNY, J.  A careful examination and consideration of the affidavits, documentary evidence, and oral testimony adduced in the hearing below by the petitioner and respondent, leads us to the conclusion that the findings of fact hereinabove set out are supported by competent evidence. Therefore, the exceptions entered to the findings of fact and the assignments of error based thereon, are overruled.

However, finding of fact No. 7, in our opinion, is not sufficient to support the conclusion that it is for the best interest of the minor child, Irene Pearl Kimel, that her custody be awarded to her mother, the petitioner herein.

The petitioner testified that she has no income whatever of her own. It is clear that she is relying on her husband to support the child. Conceding as true all the petitioner said in the hearing below about her husband's income and his willingness to cooperate in the support of the child if the petitioner is awarded her custody, there is nothing in her testimony to support an order that would bind the husband of the petitioner to support her child. *S. v. Ray*, 195 N.C. 628, 143 S.E. 216. He did not join in the petition or otherwise establish his consent or willingness to assume the legal responsibility for the support of such child if her custody is awarded to the petitioner, and we have been unable to find any statute in effect in Ohio that would require him to support such child.

In our opinion, the burden is on the petitioner to show that, in the event she is awarded custody of the child, resources for the support and maintenance of the child are or will be available.

Certain statements in the testimony of the respondent tend to show that the minor child, Irene Pearl Kimel, has a personal estate of $40,000, or one-half of her father's estate, and that a guardian has been appointed for her in Forsyth County. According to the evidence, Irene Pearl Kimel was never adopted by her father, Shirley A. Kimel, and his wife, Ruth Kimel. Then the question rises: How can she inherit anything from her father? Section 2105.18 of the Ohio Revised Code, Volume 2, Illegitimate children deemed legitimate, provides: " * * * The natural father of a child by a woman unmarried at the time of the birth of such child, may file an application in the probate court of the county wherein he resides or in the county in which such child resides, acknowledging that such child is his, and upon consent of the mother, or if she be deceased or incompe-

tent, or has surrendered custody, upon the consent of the person or agency having custody of such child, or of a court having jurisdiction over the custody thereof, the probate court, if satisfied that the applicant is the natural father and that establishment of such relationship ·is for the best interest of such child, shall enter the finding of such fact upon its journal and thereafter such child shall be the child of the applicant as though born to him in lawful wedlock."

The agreement referred to hereinabove, dated 9 February 1956, sets out therein that, "Whereas, on the 21st day of June 1955, the said Shirley A. Kimel filed in the Probate Court of Stark County, Ohio a written declaration subscribed by him and attested by Lawrence W. Renner declaring that the said Shirley A. Kimel is the father of the said Irene Pearl Aungst who was born on January 2, 1952, and the said Ollie C. Aungst of Canton, Ohio, the mother of Irene Pearl Aungst, filed her answer and consent in the Probate Court of Stark County, Ohio, admitting that Shirley A. Kimel was the father of said child and consenting to the change of the name of said child from Irene Pearl Aungst to the name of Irene Pearl Kimel, and the Judge of the Probate Court of Stark County, Ohio, being satisfied that the said Shirley A. Kimel was of sound mind and memory and free from any restraint did therefore order that such facts be entered on the journal of said court and that a complete record of such proceedings be made, also that the name of said, child be changed from Irene Pearl Aungst to Irene Pearl Kimel."

There would seem to be no doubt of the legal right of Irene Pearl Kimel to inherit from her father by reason of his compliance with the provisions of the above statute. Furthermore, the Ohio Revised Code, Volume 2, section 2105.06, Statute of descent and distribution, provides: "When a person dies intestate having title or right to any personal property or to any real estate or inheritance in this state, such personal property shall be distributed and such real estate or inheritance shall descend and pass in parcenary * * * in the following course: * * * (B) If there is a spouse and one child or its lineal descendants surviving, one half to the spouse and one half to such child or its lineal descendants, *per stirpes.*"

In our opinion, there is nothing disclosed by the record in this case to support the contention of the respondent that the petitioner had wilfully abandoned her child and, therefore, has forfeited her right to its custody.

This Court, in the case of *In re Shelton,* 203 N.C. 75, 164 S.E. 332, said: "It is well settled as the law of this State that the mother of an illegitimate child, if a suitable person, is entitled to the care

and custody of the child, even though there be others who are more suitable."

To the end that the question of support, and the further question as to whether or not Irene Pearl Kimel does have a substantial estate which she inherited from her father that might be available for her support, may be inquired into and considered in connection with what is for the best interest of said minor, this cause is remanded for further hearing and determination.

Error and Remanded.

PARKER, J., concurring in the result.

Irene Pearl Kimel will be nine years old on 2 January 1961. When she was four years old, her natural mother granted the exclusive care, custody and control of the child to her natural father, and he had such care, custody and control of the child until his death on 25 November 1959. On 7 December 1957 the natural father married respondent Ruth Kimel. During her natural father's married life the child lived in his home, and was treated by Ruth Kimel as her own child.

On 9 June 1956 the natural mother married Arthur Henry Kuhlins.

It appears that the child inherited $40,000.00 from the estate of her deceased natural father, and that a guardian has been appointed for her in Forsyth County, North Carolina. The child wishes to live with respondent Ruth Kimel, with whom she has lived since 7 December 1957.

The natural mother, after her marriage, did not seek to obtain custody, nor partial custody, of the child until the child had inherited $40,000.00. Did the natural mother's interest in obtaining the custody of the child originate when she learned that the child had inherited $40,000.00? Is her primary interest obtaining the custody of the child or obtaining possession of the inheritance? If custody of the child is awarded to the natural mother, what can or will be done to require the use of the child's inheritance for her exclusive benefit, and to secure its safety? The natural mother has no income of her own, and it does not appear that her husband owns any substantial property, though he has a monthly salary of $385.00. If her husband agrees to support the child, and then fails to live up to his agreement, how can it be enforced? In my opinion, all of these matters should be investigated and considered by the court in determining what will best promote the interest of the child, for that is the crucial question in this proceeding.

The case of *Harris v. Harris*, 115 N.C. 587, 20 S.E. 187, involved the custody of a nine and one-half-year-old child. The Court said: "What the preferences of the child were is not found as a fact, though this has weight always with a court in such cases according to the age and intelligence of the child." See also *Spears v. Snell*, 74 N.C. 210 (the infant here was thirteen years old), and *In re Gibbons*, 247 N.C. 273, 101 S.E. 2d 16 (the infant here was ten years old) to the effect that the feelings and wishes of the child, according to his mental capacity to form them, who is the party mainly concerned, should be given serious consideration by the court, in the exercise of its discretion, as to the person to whose custody and control the child is to be subjected. In my opinion, the feelings and wishes of the child here, according to her mental capacity to form them, should also be given serious consideration by the trial judge in his determination of her custody.