STACY L. PRICE v. ROBIN HOWARD

No. 312A96

(Filed 9 May 1997)

1. **Parent and Child § 19 (NCI4th)— child custody—disputes between natural parents or nonparents—best interest of child test**

    In a custody dispute between two natural parents (biological or adoptive) or between two parties who are not natural parents, the "best interest of the child" test must be applied. N.C.G.S. § 50-13.2(a).

    **Am Jur 2d, Parent and Child §§ 23 et seq.**

2. **Parent and Child § 21 (NCI4th)— child custody—constitutionally protected status of parent—inconsistent conduct—best interest of child test**

    A natural parent may no longer enjoy a constitutionally protected paramount interest in the companionship, custody, care, and control of his or her child if the parent's conduct is inconsistent with the presumption that he or she will act in the best interest of the child or if he or she fails to shoulder the responsibilities that are attendant to rearing a child. If a natural parent's conduct has not been inconsistent with his or her constitutionally protected status, application of the "best interest of the child" standard in a custody dispute with a nonparent would offend the Due Process Clause. However, conduct inconsistent with the par-

PRICE v. HOWARD

[346 N.C. 68 (1997)]

ent's protected status, which need not rise to the statutory level warranting termination of parental rights, would result in application of the "best interest of the child" test without offending the Due Process Clause.

**Am Jur 2d, Parent and Child § 24.**

3. **Parent and Child § 21 (NCI4th)— child custody—parent's constitutionally protected status—inconsistent conduct— best interest of the child test**

While unfitness, neglect, and abandonment clearly constitute conduct inconsistent with a natural parent's constitutionally protected paramount status, other types of conduct, which must be viewed on a case-by-case basis, can also rise to this level. Where such conduct is properly found by the trier of fact based on evidence in the record, custody should be determined by the "best interest of the child" test mandated by statute.

**Am Jur 2d, Parent and Child §§ 23 et seq.**

4. **Parent and Child § 25 (NCI4th)— child custody—dispute between mother and nonparent—applicability of best interest of child test—remand for determination**

A custody dispute between defendant natural mother and plaintiff nonparent, the child's *de facto* father, is remanded for a determination as to whether defendant's conduct was inconsistent with the constitutionally protected status of a natural parent so that the "best interest of the child" standard should be applied where defendant lived with plaintiff and the child in a family unit for the child's first three years of life, although plaintiff and defendant never married; knowing that plaintiff was not the child's natural father, defendant represented to plaintiff, the child and others that plaintiff was the natural father; after the parties separated, the child remained in the primary physical custody of plaintiff but also spent time with defendant, but the amount of contact defendant had with the child was strongly disputed in the parties' testimony; a court-ordered paternity test after the custody dispute arose excluded plaintiff as the child's father; and the testimony at trial shows that the parties disputed whether defendant's voluntary relinquishment of custody to plaintiff was intended to be temporary or indefinite and whether she informed plaintiff and the child that the relinquishment of custody was temporary. If defendant represented that plaintiff was the child's

PRICE v. HOWARD

[346 N.C. 68 (1997)]

natural father and voluntarily gave him custody of the child for an indefinite period of time with no notice that such relinquishment of custody would be temporary, use of the "best interest of the child" test would be appropriate; however, if defendant and plaintiff agreed that plaintiff would have custody of the child only for a temporary period of time and defendant sought custody at the end of that period, defendant would still enjoy a constitutionally protected status absent other conduct inconsistent with that status.

**Am Jur 2d, Parent and Child §§ 28, 29.**

5. **Parent and Child § 21 (NCI4th)— child custody—natural parent—constitutionally protected interest—relinquishment of custody—notice that temporary—avoiding inconsistent conduct**

While there are circumstances where the responsibility of a parent to act in the best interest of his or her child would require a temporary relinquishment of custody, in order to preserve the constitutional protection of parental interests, the parent should notify the custodian upon relinquishment of custody that the relinquishment is temporary, and the parent should avoid conduct inconsistent with protected parental interests. Such conduct includes failure to maintain personal contact with the child and failure to resume custody when able.

**Am Jur 2d, Parent and Child §§ 28 et seq.**

Appeal by plaintiff pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 122 N.C. App. 674, 471 S.E.2d 673 (1996), affirming in part and reversing in part a custody order entered by Chaney, J., on 29 March 1995 in District Court, Durham County. Heard in the Supreme Court 13 November 1996.

*Vosburg and Fullenwider, by Ann Marie Vosburg, for plaintiff-appellant.*

*Mildred T. Hardy for defendant-appellee.*

ORR, Justice.

The custody issue in this case arises out of the relationship between plaintiff and defendant, who lived together in Durham, North Carolina, from 1986 until 1989. On 10 June 1986, defendant Robin Howard gave birth to a daughter. The child's name on the birth

**PRICE v. HOWARD**

[346 N.C. 68 (1997)]

certificate was listed as Dominique Price, but the father's name on the birth certificate was left blank. However, from the time of the child's birth, defendant represented that plaintiff was the child's natural father. As a result, it was the child's belief that plaintiff was in fact her natural father.

Plaintiff and defendant separated in 1989, with the child remaining in the primary physical custody of plaintiff, but also spending time with defendant mother. Defendant stayed in the Durham area until the summer of 1991, when she moved to Eden, North Carolina. The child remained with plaintiff and attended school in Durham during the 1991-1992 school year. During the summer of 1992, defendant attempted to have the child's school records transferred to the Rockingham County school system.

Upon learning of defendant's attempt to have the child's school records transferred, plaintiff filed an action seeking custody of the child. In her answer, defendant denied that plaintiff was the natural father of the child. The court subsequently ordered a blood test, the results of which excluded plaintiff as the natural father of the child. In a 4 September 1992 order, the court found that it was in the child's best interests that she remain in the custody of plaintiff, and the court awarded plaintiff temporary custody of the child, subject to visitation by defendant. On 3 June 1993, plaintiff was married to Vanessa Price, and the child resided with them in Durham.

In its final order, dated 28 March 1995, the court concluded that both plaintiff and defendant were fit and proper persons to exercise the exclusive care and custody of the child. The court also concluded that it was in the child's best interests that she be in the primary physical custody of plaintiff. However, the court concluded that the recent ruling by this Court in *Petersen v. Rogers*, 337 N.C. 397, 445 S.E.2d 901 (1994), *rev'g*, 111 N.C. App. 712, 433 S.E.2d 770 (1993), did not allow the court to make that award. Therefore, the court ordered that defendant be awarded the exclusive companionship, care, custody, and control of the child. The court also ordered that the child receive therapy and that plaintiff and defendant share equally all uninsured costs for the therapy.

Upon review by the Court of Appeals, the trial court's order that plaintiff share in therapy costs was reversed on the ground that support for minor children is a parental obligation. *Price v. Howard*, 122 N.C. App. 674, 471 S.E.2d 673 (1996) (citing *Boyd v. Boyd*, 81 N.C. App. 71, 77-78, 343 S.E.2d 581, 585-86 (1986)). The Court of Appeals'

**PRICE v. HOWARD**

[346 N.C. 68 (1997)]

majority affirmed the custody award, relying on the holding of *Petersen v. Rogers*. Judge Greene dissented, *id.* at 677, 471 S.E.2d at 675, arguing that *Petersen* does not govern the custody determination in this case. Plaintiff appealed pursuant to N.C.G.S. § 7A-30(2), based on Judge Greene's dissent. For the reasons stated below, we reverse the majority decision of the Court of Appeals.

[1] The General Assembly has prescribed the standard to be applied in a custody proceeding in North Carolina in N.C.G.S. § 50-13.2, which provides that "[a]n order for custody of a minor child entered pursuant to this section shall award the custody of such child to such person, agency, organization or institution as will best promote the interest and welfare of the child." N.C.G.S. § 50-13.2(a) (1996). Therefore, in a custody dispute between two natural parents (we intend this phrase to include both biological and adoptive parents) or between two parties who are not natural parents, this "best interest of the child" test must be applied. The case now before us, however, is between a natural parent and a third party who is not a natural parent. In *Petersen*, this Court held that natural parents have a constitutionally protected interest in the companionship, custody, care, and control of their children. We stated that this interest must prevail in a custody dispute with a nonparent, absent a showing of unfitness or neglect. We are now called upon to decide whether other circumstances can require that interest to yield to the "best interest of the child" test prescribed by N.C.G.S. § 50-13.2(a). As will be discussed more fully, this decision requires a due-process analysis in which the parent's well-established paramount interest in the custody and care of the child is balanced against the state's well-established interest in protecting the welfare of children.

In the case *sub judice*, the trial court found that it was in the best interests of the child for custody to remain with plaintiff. However, relying on this Court's decision in *Petersen v. Rogers*, the trial judge felt compelled to award custody to defendant. *Petersen* involved a custody dispute between a child's natural parents and a couple who had unlawfully adopted the child. Although this Court voided the adoption in *In re Adoption of P.E.P.*, 329 N.C. 692, 407 S.E.2d 505 (1991), the couple that had unlawfully adopted the child filed an action seeking custody of the child. After inquiring into the religious practices and beliefs of the plaintiffs, the trial court applied the "best interest of the child" test and awarded custody to defendants, the child's natural parents. The Court of Appeals did not address the question of whether the "best interest of the child" test was correctly

applied or whether the natural parents' due-process interest was adequately protected. Instead, the Court of Appeals held that the "plaintiffs' right to freedom of religion, as guaranteed by the federal and state constitutions, was violated by the trial court's extensive inquiry into plaintiffs' religion," *Petersen,* 337 N.C. at 399-400, 445 S.E.2d at 902, and the court remanded the case " 'for proceedings free from unwarranted religious inquisition into the beliefs of the parties' ", *id.* (quoting *Petersen,* 111 N.C. App. at 725, 433 S.E.2d at 778).

Defendants appealed to this Court, contending that the case involved a substantial question arising under the state and federal Constitutions. This Court also granted defendants' petition for discretionary review. We held that the trial court's inquiry into the plaintiffs' religious beliefs, if error, was harmless because, "[b]ased on the record, defendants' paramount right to custody of their minor child had to prevail." *Id.* at 404, 445 S.E.2d at 905. The plaintiffs argued to this Court that "the welfare of the child is paramount to all common law preferential rights of the parents." *Id.* at 403, 445 S.E.2d at 905. This Court rejected that argument by recognizing that the parents' interest in the companionship, custody, care, and control of the child is protected by the United States Constitution. Relying in part on *Stanley v. Illinois,* 405 U.S. 645, 31 L. Ed. 2d 551 (1972), we recognized the general principle that because of the strength and importance of the parents' constitutionally protected interests, those interests must prevail against a third party unless the court finds that the parents are unfit or have neglected the welfare of their children. *See Petersen,* 337 N.C. at 403-04, 445 S.E.2d at 905.

It was unnecessary in *Petersen* to articulate anything more than general constitutional principles. In *Petersen,* the plaintiffs unlawfully adopted the defendants' natural child. This Court noted the trial court's findings of fact that the child "is not eligible for adoption; the rights of his parents have not been terminated; . . . his parents have not consented to any such adoption"; and the parents "are fit and appropriate persons to have custody of their son." *Id.* at 404, 455 S.E.2d at 905. This Court concluded:

> There was no finding that defendants had neglected their child's welfare in any way. Based on the record, defendants' paramount right to custody of their minor child had to prevail; and the trial court could not award custody to anyone other than defendants. Since as a matter of law the trial court could not award cus-

tody to plaintiffs, inquiry into their fitness for purposes of custody was irrelevant.

*Id.* The Court did not discuss whether a "best interest of the child" test violated the Due Process Clause. However, in the case now before us, such a discussion is necessary.

"The Fourteenth Amendment provides that no State shall deprive any person of life, liberty, or property without due process of law." *Lehr v. Robertson*, 463 U.S. 248, 256, 77 L. Ed. 2d 614, 623 (1983). The interest implicated in the case before us and in *Petersen* is a natural parent's liberty interest in the companionship, custody, care, and control of his or her child. The United States Supreme Court has recognized that this interest is protected by the Constitution. In *Quilloin v. Walcott*, 434 U.S. 246, 255, 54 L. Ed. 2d 511, 519 (1978), the Court stated: "We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected." In *Lassiter v. Department of Social Servs.*, 452 U.S. 18, 27, 68 L. Ed. 2d 640, 649 (1981), the Court stated:

> This Court's decisions have by now made plain beyond the need for multiple citation that a parent's desire for and right to "the companionship, care, custody, and management of his or her children" is an important interest that "undeniably warrants deference and, absent a powerful countervailing interest, protection."

*Id.* (quoting *Stanley v. Illinois*, 405 U.S. at 651, 31 L. Ed. 2d at 558).

The question now before us is whether, under the facts of this case, the trial court was required to hold that defendant's constitutionally protected interest in the companionship, custody, care, and control of her child must prevail or whether the statutorily prescribed "best interest of the child" test should have been applied to determine custody. As the United States Supreme Court observed in *Lassiter v. Department of Social Services*:

> For all its consequence, "due process" has never been, and perhaps can never be, precisely defined. "[U]nlike some legal rules," this Court has said, due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." Rather, the phrase expresses the requirement of "fundamental fairness," a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise ·which must discover

what "fundamental fairness" consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.

*Lassiter*, 452 U.S. at 24-25, 68 L. Ed. 2d at 648 (quoting *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, 6 L. Ed. 2d 1230, 1236 (1961)). Because the question presented in this case is resolved by an analysis of the nature and scope of defendant's due-process interest in the companionship, custody, care, and control of her child, a strict substantive or procedural due-process analysis is not necessary.

Due-process interests are based in part on history and tradition. *Michael H. v. Gerald D.*, 491 U.S. 110, 105 L. Ed. 2d 91 (1989). Therefore, prior cases of this Court are instructive on the issue before us because they show how we have addressed custody issues in a wide variety of circumstances. North Carolina law traditionally has protected the interests of natural parents in the companionship, custody, care, and control of their children, with similar recognition that some facts and circumstances, typically those created by the parent, may warrant abrogation of those interests. The reasoning for such a rule was, perhaps, best explained in *In re Hughes*, 254 N.C. 434, 436-37, 119 S.E.2d 189, 191 (1961), in which this Court stated that parents have a duty to care for their minor children and explained that "[b]ecause the law presumes parents will perform their obligations to their children, it presumes their prior right to custody, but this is not an absolute right." *Id.* This Court further explained that "[w]hen a parent neglects the welfare and interest of his child, he waives his usual right of custody." *Id.* at 437, 119 S.E.2d at 191. *See also Wilson v. Wilson*, 269 N.C. 676, 677, 153 S.E.2d 349, 351 (1967) (stating that "[w]hile it is true that a parent, if a fit and suitable person, is entitled to the custody of his child, it is equally true that where fitness and suitability are absent he loses this right"); *In re Gibbons*, 247 N.C. 273, 280, 101 S.E.2d 16, 21-22 (1957) (recognizing that the legal right of a parent to custody may yield to the interests of the child where the "parent has voluntarily permitted the child to remain continuously in the custody of others in their home, and has taken little interest in it, thereby substituting such others in his own place, so that they stand *in loco parentis* to the child, and continuing this condition of affairs for so long a time that the love and affection of the child and the foster parents have become mutually engaged, to the extent that a severance of this relationship would tear the heart of the child, and mar his happiness").

### PRICE v. HOWARD

[346 N.C. 68 (1997)]

On several occasions, the United States Supreme Court has held that a state law inadequately protected a parent's due-process interest in the companionship, custody, care, and control of his child. *See, e.g., Santosky v. Kramer,* 455 U.S. 745, 71 L. Ed. 2d 599 (1982) (holding that in a proceeding to terminate parental rights, the "preponderance of the evidence" standard of proof violates the Due Process Clause and that due process requires at least a "clear and convincing evidence" standard); *Stanley v. Illinois,* 405 U.S. 645, 31 L. Ed. 2d 551 (holding that an Illinois statute that conclusively presumed every father of a child born out of wedlock to be an unfit person to have custody of his children violated the Due Process Clause and that due process required the father to be given an opportunity to present evidence regarding his fitness as a parent); *cf. Lassiter v. Department of Social Servs.,* 452 U.S. 18, 68 L. Ed. 2d 640 (holding that although petitioner's due-process rights were not violated under the circumstances of that case, in some cases due process would require appointment of counsel in a decision to terminate parental status).

However, the United States Supreme Court has also recognized that protection of the parent's interest is not absolute. In *Lehr v. Robertson,* 463 U.S. 248, 77 L. Ed. 2d 614, the Court held that a natural father's interest in his relationship with his child was not unconstitutionally infringed upon by a state procedure that allowed the child's stepfather to adopt the child against the father's wishes. The Court pointed out its traditional adherence to the principle that "the rights of the parents are a counterpart of the responsibilities they have assumed." *Id.* at 257, 77 L. Ed. 2d at 624. In discussing this principle, the Court stated:

Thus, the "liberty" of parents to control the education of their children that was vindicated in *Meyer v. Nebraska,* 262 U.S. 390, 67 L. Ed. 1042 (1923), and *Pierce v. Society of Sisters,* 268 U.S. 510, 69 L. Ed. 1070 (1925), was described as a "right, coupled with the high duty, to recognize and prepare [the child] for additional obligations." [*Pierce,* 268 U.S.] at 535, 69 L. Ed. [at 1078]. The linkage between parental duty and parental right was stressed again in *Prince v. Massachusetts,* 321 U.S. 158, 166, 88 L. Ed. 645, [652] (1944), when the Court declared it a cardinal principle "that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." [*Id.* at 166, 88 L. Ed. at 652]. In these cases the Court has found that the relationship of love and duty in a recognized family unit is an interest

in liberty entitled to constitutional protection. *See also Moore v. City of East Cleveland,* 431 U.S. 494, 52 L. Ed. 2d 531 (1977) (plurality opinion).

*Lehr,* 463 U.S. at 257-58, 77 L. Ed. 2d at 624 (citations modified).

In *Lehr,* the Court stressed the linkage between parental duty and parental right and noted that the father in that case had "never had any significant custodial, personal, or financial relationship with [the child], and he did not seek to establish a legal tie until after she was two years old." *Id.* at 262, 77 L. Ed. 2d at 627. The Court reasoned that

> [w]hen an unwed father demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child," *Caban [v. Mohammed],* 441 U.S. [380], 392, 60 L. Ed. 2d 297, [307 (1979)], his interest in personal contact with his child acquires substantial protection under the Due Process Clause. At that point it may be said that he "act[s] as a father toward his children." *Id.* at 389, n.7, 60 L. Ed. 2d [at 305, n.7]. But the mere existence of a biological link does not merit equivalent constitutional protection.

*Lehr,* 463 U.S. at 261, 77 L. Ed. 2d at 626 (citations modified). The Court further stated, " '[T]he importance of the familial relationship, to the individuals involved and to the society, stems from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in "promot[ing] a way of life" through the instruction of children as well as from the fact of blood relationship.' *Smith v. Organization of Foster Families for Equality and Reform,* 431 U.S. 816, 844, 53 L. Ed. 2d 14, [35] (1977) (quoting *Wisconsin v. Yoder,* 406 U.S. 205, 231-33, 32 L. Ed. 2d 15, [34-35] (1972))." *Lehr,* 463 U.S. at 261, 77 L. Ed. 2d at 626 (citations modified).

In *Quilloin v. Walcott,* 434 U.S. 246, 54 L. Ed. 2d 511, the Court considered a central element found in the case before us, whether a court may apply the "best interest of the child" test instead of finding unfitness of a parent before infringing on that parent's rights in the relationship with the child. "*Quilloin* involved the constitutionality of a Georgia statute that authorized the adoption, over the objection of the natural father, of a child born out of wedlock." *Lehr,* 463 U.S. at 259, 77 L. Ed. 2d at 625. The child's mother remarried, and the child's new stepfather filed an adoption petition. The trial court found adoption by the child's stepfather to be in the child's best interests. *Id.* The father appealed to the Supreme Court of Georgia, argu-

ing that the adoption should not be allowed because the trial court did not make a finding of abandonment or other unfitness on his part. *Quilloin*, 434 U.S. at 252, 54 L. Ed. 2d at 517-18. The Georgia Supreme Court affirmed the decision of the trial court, relying generally on the strong state policy of rearing children in a family setting. "The court also emphasized the special force of this policy under the facts of this case, pointing out that the adoption was sought by the child's stepfather, who was part of the family unit in which the child was in fact living, and that the child's natural father had not taken steps to support or legitimate the child over a period of more than 11 years." *Id.* at 252-53, 54 L. Ed. 2d at 518. The father appealed to the United States Supreme Court, again arguing that Georgia law violated the Due Process Clause because it imposed a "best interests of the child" standard. He contended "that he was entitled to recognition and preservation of his parental rights absent a showing of his 'unfitness.'" *Id.* at 254, 54 L. Ed. 2d at 519. The United States Supreme Court unanimously held that the father's interests were adequately protected by a "best interests of the child" standard. *See id.*

In *Quilloin*, the Court stated:

We have little doubt that the Due Process Clause would be offended "[i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest." *Smith v. Organization of Foster Families*, 431 U.S. 816, 862-63, 53 L. Ed. 2d 14, [46-47] (Stewart, J., concurring in judgment). But this is not a case in which the unwed father at any time had, or sought, actual or legal custody of his child. Nor is this a case in which the proposed adoption would place the child with a new set of parents with whom the child had never before lived. Rather, the result of the adoption in this case is to give full recognition to a family unit already in existence, a result desired by all concerned, except appellant. Whatever might be required in other situations, we cannot say that the State was required in this situation to find anything more than that the adoption, and denial of legitimation, were in the "best interests of the child."

*Quilloin*, 434 U.S. at 255, 54 L. Ed. 2d at 520 (citation modified). The result in *Quilloin* was, in effect, to terminate the parental rights of the natural parent. In the case *sub judice*, no such severe result would occur. Here, application of the legislatively mandated "best

interest of the child" test would result only in a determination by the trial court as to which party should have custody.

[2],[3]  A natural parent's constitutionally protected paramount interest in the companionship, custody, care, and control of his or her child is a counterpart of the parental responsibilities the parent has assumed and is based on a presumption that he or she will act in the best interest of the child. *Lehr*, 463 U.S. 248, 77 L. Ed. 2d 614; *In re Hughes*, 254 N.C. 434, 119 S.E.2d 189. Therefore, the parent may no longer enjoy a paramount status if his or her conduct is inconsistent with this presumption or if he or she fails to shoulder the responsibilities that are attendant to rearing a child. If a natural parent's conduct has not been inconsistent with his or her constitutionally protected status, application of the "best interest of the child" standard in a custody dispute with a nonparent would offend the Due Process Clause. *See Petersen*, 337 N.C. 397, 445 S.E.2d 901; *see also Quilloin*, 434 U.S. at 255, 54 L. Ed. 2d at 520; *Smith*, 431 U.S. at 862-63, 53 L. Ed. 2d at 46-47. However, conduct inconsistent with the parent's protected status, which need not rise to the statutory level warranting termination of parental rights, *see* N.C.G.S. § 7A-289.32 (1995), would result in application of the "best interest of the child" test without offending the Due Process Clause. Unfitness, neglect, and abandonment clearly constitute conduct inconsistent with the protected status parents may enjoy. Other types of conduct, which must be viewed on a case-by-case basis, can also rise to this level so as to be inconsistent with the protected status of natural parents. Where such conduct is properly found by the trier of fact, based on evidence in the record, custody should be determined by the "best interest of the child" test mandated by statute.

[4]  We now turn to consideration of whether the conduct involved in this case, a period of voluntary nonparent custody, may constitute conduct inconsistent with the protected status of natural parents and therefore result in the application of the "best interest of the child" test. As noted above, this Court addressed a similar question using common law principles in *In re Gibbons*, 247 N.C. 273, 101 S.E.2d 16. The *Gibbons* Court quoted with approval from *Merchant v. Bussell*, 139 Me. 118, 124, 27 A.2d 816, 819 (1942):

"This petitioner for a period of more than four years showed not much more than a formal interest in his child. Circumstances were such that perhaps this was inevitable. He knew that the child was well cared for and was content to let the natural ties

which bound him to his offspring grow very tenuous. Since the death of his wife there is little evidence that he has had any great yearning to have his child with him, to sacrifice for her, or to lavish on her the affection which would have meant so much to her in her tender years. Instead he surrendered this high privilege to the grandmother, who with the help of her unmarried daughters has given to this child the same devotion as it would have received from its own mother. Now having permitted all this to happen he claims the right, because he is the father, to sever the ties which bind this child to the respondent. In this instance the welfare of the child is paramount. The dictates of humanity must prevail over the whims and caprice of a parent."

*Gibbons*, 247 N.C. at 280-81, 101 S.E.2d 22.

A similar question was also addressed by the Court of Appeals of New York using constitutional principles in *Bennett v. Jeffreys*, 40 N.Y.2d 543, 356 N.E.2d 277, 387 N.Y.S.2d 821 (1976). The *Bennett* court described the facts of that case as follows:

Some eight years ago, the mother, then 15 years old, unwed, and living with her parents, gave birth to the child. Under pressure from her mother, she reluctantly acquiesced in the transfer of the newborn infant to an older woman, Mrs. Jeffreys, a former classmate of the child's grandmother. The quality and quantity of the mother's later contacts with the child were disputed. The Family Court found, however, that there was no statutory surrender or abandonment. Pointedly, the Family Court found that the mother was not unfit.

*Id.* at 544, 356 N.E.2d at 280, 387 N.Y.S.2d at 823. The mother brought a proceeding to obtain custody of her daughter. The *Bennett* court defined the issue as "whether the natural mother, who has not surrendered, abandoned, or persistently neglected her child, may, nevertheless, be deprived of the custody of her child because of a prolonged separation from the child for most of its life." *Id.* The court first recognized the constitutionally protected interest of natural parents in the custody of their children:

Absent extraordinary circumstances, narrowly categorized, it is not within the power of a court, or, by delegation of the Legislature or court, a social agency, to make significant decisions concerning the custody of children, merely because it could make a better decision or disposition. The State is *Parens*

**PRICE v. HOWARD**

[346 N.C. 68 (1997)]

*patriae* and always has been, but it has not displaced the parent in right or responsibility. Indeed, the courts and the law would, under existing constitutional principles, be powerless to supplant parents except for grievous cause or necessity (*See Stanley v. Illinois*, 405 U.S. 645, 651[, 31 L. Ed. 2d 551, 558-59]).

*Bennett*, 40 N.Y.2d at 545-46, 356 N.E.2d at 281, 387 N.Y.S.2d at 824. As in North Carolina, New York statutes required courts to base custody decisions solely upon the best interest of the child. *See id.* at 547, 356 N.E.2d at 282, 387 N.Y.S.2d at 825. However, the *Bennett* court noted that

neither decisional rule nor statute can displace a fit parent because someone else could do a "better job" of raising the child in the view of the court (or the Legislature), so long as the parent or parents have not forfeited their "rights" by surrender, abandonment, unfitness, persisting neglect or other extraordinary circumstance. These "rights" are not so much "rights", but responsibilities which reflect the view, noted earlier, that, except when disqualified or displaced by extraordinary circumstances, parents are generally best qualified to care for their own children and therefore entitled to do so.

*Id.* at 548, 356 N.E.2d at 282, 387 N.Y.S.2d at 826. The court also pointed out that

where there is warrant to consider displacement of the parent, a determination that extraordinary circumstances exist is only the beginning, not the end, of judicial inquiry. Extraordinary circumstances alone do not justify depriving a natural parent of the custody of a child. Instead, once extraordinary circumstances are found, the court must then make the disposition that is in the best interest of the child.

*Id.* at 548, 356 N.E.2d at 283, 387 N.Y.S.2d at 826. In considering whether disruption of custody over an extended period of time may result in a possible displacement of a parent's constitutionally protected interests, the *Bennett* court recognized the danger of a fact situation such as that in *Petersen*, in which the custodians obtained custody unlawfully. The court stated that

[t]he resolution of cases must not provide incentives for those likely to take the law into their own hands. Thus, those who obtain custody of children unlawfully, particularly by kidnapping, violence, or flight from the jurisdiction of the courts, must be

deterred. Society may not reward, except at its peril, the lawless because the passage of time has made correction inexpedient.

*Id.* at 550, 356 N.E.2d at 284, 387 N.Y.S.2d at 827. Finally, the *Bennett* court concluded that the relatively lengthy period of nonparent custody, along with other factors, constituted sufficient extraordinary circumstances to remand the case for a hearing on the best interest of the child. The court again emphasized the following:

> In all of this troublesome and troubled area there is a fundamental principle. Neither law, nor policy, nor the tenets of our society would allow a child to be separated by officials of the State from its parent unless the circumstances are compelling. Neither the lawyers nor Judges in the judicial system nor the experts in psychology or social welfare may displace the primary responsibility of child-raising that naturally and legally falls to those who conceive and bear children. Again, this is not so much because it is their "right", but because it is their responsibility. The nature of human relationships suggests overall the natural workings of the child-rearing process as the most desirable alternative. But absolute generalizations do not fulfill themselves and multifold exceptions give rise to cases where the natural workings of the process fail, not so much because a legal right has been lost, but because the best interest of the child dictates a finding of failure.

*Id.* at 552, 356 N.E.2d at 285, 387 N.Y.S.2d at 828-29.

As in *Bennett*, the case before us involves a period of voluntary nonparent custody rather than unfitness or neglect. The conduct in *Lehr* and *Quilloin*, failure to ever establish any significant custodial, personal, or financial relationship with the child, also is not present in the case before us. In this case, defendant had a custodial, personal, and financial relationship with the child for a period of time; she lived with plaintiff and the child in a family unit for the child's first three years of life. However, it was strongly disputed in the parties' testimony how much contact defendant had with her daughter after the parties separated. The trial court's findings of fact state only that "upon the separation of the parties, the minor child spent time with both parties until the summer of 1990"; that "during the summers, the minor child attended various summer camps with the plaintiff"; and that "the Defendant moved to Eden, North Carolina in July of 1991 and the child remained in Durham, North Carolina with the Plaintiff as she was previously attending Lakewood Elementary

PRICE v. HOWARD

[346 N.C. 68 (1997)]

School." Defendant testified that she initially opposed relinquishing custody to plaintiff, but that she later agreed that plaintiff should maintain custody, at least temporarily.

It is clear from the record that defendant created the existing family unit that includes plaintiff and the child, but not herself. Knowing that the child was her natural child, but not plaintiff's, she represented to the child and to others that plaintiff was the child's natural father. She chose to rear the child in a family unit with plaintiff being the child's *de facto* father. The testimony at trial shows that the parties disputed whether defendant's voluntary relinquishment of custody to plaintiff was intended to be temporary or indefinite and whether she informed plaintiff and the child that the relinquishment of custody was temporary. This is an important factor to consider, for, if defendant had represented that plaintiff was the child's natural father and voluntarily had given him custody of the child for an indefinite period of time with no notice that such relinquishment of custody would be temporary, defendant would have not only created the family unit that plaintiff and the child have established, but also induced them to allow that family unit to flourish in a relationship of love and duty with no expectations that it would be terminated.

However, if defendant and plaintiff agreed that plaintiff would have custody of the child only for a temporary period of time and defendant sought custody at the end of that period, she would still enjoy a constitutionally protected status absent other conduct inconsistent with that status. *See Smith v. Organization of Foster Families*, 431 U.S. 816, 53 L. Ed. 2d 14 (holding that natural parents could not lose parental rights to foster parents where the foster agreement contemplates a surrender of custody for only a temporary period of time).

[5] We wish to emphasize this point because we recognize that there are circumstances where the responsibility of a parent to act in the best interest of his or her child would require a temporary relinquishment of custody, such as under a foster-parent agreement or during a period of service in the military, a period of poor health, or a search for employment. However, to preserve the constitutional protection of parental interests in such a situation, the parent should notify the custodian upon relinquishment of custody that the relinquishment is temporary, and the parent should avoid conduct inconsistent with the protected parental interests. Such conduct would, of course, need to be viewed on a case-by-case basis, but may include

failure to maintain personal contact with the child or failure to resume custody when able.

In the case before us, because the trial court made no findings about whether defendant and plaintiff agreed that the surrender of custody would be temporary, or about the degree of custodial, personal, and financial contact defendant maintained with the child after the parties separated, we cannot conclude whether defendant should prevail based upon the constitutionally protected status of a natural parent or whether the "best interest of the child" test should be applied.

The decision of the Court of Appeals is therefore reversed, and the case is remanded to the Court of Appeals for further remand to District Court, Durham County, for a determination of whether defendant's conduct was inconsistent with the constitutionally protected status of a natural parent. If· so, then the court should determine custody based on the "best interest of the child" standard pursuant to N.C.G.S. § 50-13.2(a). We note that our holding nullifies the portion of the Court of Appeals opinion relating to the parties' responsibility for the costs of therapy. Although support of a child ordinarily is a parental obligation, other persons standing *in loco parentis* may also acquire a duty to support the child. *See* N.C.G.S. § 50-13.4(b) (1995). It is clear that the duty of support should accompany the right to custody in cases such as this one. Therefore, upon remand, the trial court should reconsider the issue of who should bear the costs of the child's therapy in light of its ultimate custody award.

REVERSED AND REMANDED.