ZACHARY, Judge.
Respondents appeal from an order terminating their parental rights to their minor children, "Charlie" and "Deborah."[1] On appeal, respondents do not dispute the existence of grounds to terminate their parental rights. However, they contend that the court abused its discretion by terminating their rights. After consideration of respondents' arguments, we conclude that the court did not err and that its order should be affirmed.
Background
The Alamance County Department of Social Services ("DSS") became involved with the family in December 2014, after law enforcement officers were dispatched to respondents' residence in response to an incident involving domestic violence. On 13 April 2015, DSS filed juvenile petitions alleging that the juveniles were neglected and dependent. The court conducted an adjudication and disposition hearing on 3 June 2015. In an order entered on 30 June 2015, the court noted the respondents' stipulation to numerous findings of fact tending to show that respondents had substance abuse and mental health issues. The court adjudicated the children to be neglected, but allowed them to remain in respondents' home, with supervision by DSS.
On 14 September 2015, the court entered an order in which it continued custody of the children with DSS and established a primary plan of reunification with the parents, with a secondary plan of custody with a court-approved caretaker. On 24 March 2016, the court entered a permanency planning order that changed the secondary plan to adoption. Respondents failed to adequately address their mental health and substance abuse issues, and on 9 August 2016 the court changed the primary plan to adoption with a secondary plan of reunification.
On 6 September 2016, DSS filed a motion to terminate the parental rights of both respondents, alleging as grounds that respondents had: (1) neglected the juveniles, (2) willfully failed to make reasonable progress in correcting the conditions that led to the removal of the children from the home; and (3) willfully failed to pay a reasonable portion of the cost of care. See N.C. Gen. Stat. § 7B-1111(a)(1)-(3) (2015). On 21 February 2017, the court entered an order terminating the parental rights of both respondents on the first two grounds listed above, and in addition terminating the parental rights of respondent-mother on the third ground. The court concluded that termination of parental rights was in the best interest of the juveniles. Respondents timely appealed.
Discussion
If a court adjudicates the existence of one or more grounds for termination of a parent's parental rights, it must then exercise its discretion to determine whether terminating the parent's rights is in the juvenile's best interest. N.C. Gen. Stat. § 7B-1110(a) (2015). In making this determination, the court is directed to consider the age of the juvenile, the likelihood of adoption of the juvenile, the bond between the juvenile and the natural parent, the quality of the relationship between the juvenile and the proposed permanent placement, and any other relevant consideration. Id. Although the court must consider all of these factors, it is only required to make written findings of fact regarding those factors which are relevant and have an impact upon the court's decision. In re D.H., 232 N.C. App. 217, 221-22, 753 S.E.2d 732, 735 (2014). In the present case, the trial court's order includes a number of findings relevant to the court's dispositional decision, including the following:
137.... [Deborah] drew numerous pictures and created several cards for her parents stating that she loved them in the drawings and cards.
...
139. There is no doubt that these parents love their children. Unfortunately, the parents' love has not translated in the parents' ability to overcome mental health and substance abuse issues. This has been going on for 25 months. There has been treatment available throughout the involvement of [DSS]. The parents' [sic] have always had a reason/excuse why the services have not been obtained.
140. On February 3, 2017, the children will have been in care 17 months. For [Charlie], of his 29 months of life, 17 months have been out of home. He probably has no recollection of his birth home.
141. There is a high likelihood of adoption.
142. The primary plan was changed to adoption in July of 2016.
143. A termination of parental rights will aid in the permanency plan.
144. There is a strong bond between the parents and [Deborah]. They are bonded and have a good time together. At the same time, the parents have not demonstrated the ability to parent appropriately. [Charlie] has a bond that is not as strong as [Deborah's] to the parents.
145. After being in care for 17 months, [Deborah] is on grade level and has outstanding school attendance.
146. [Deborah] has also indicated a bond to her foster parents.
147. The quality of the relationship between the children and foster parents is high and appears to be increasing. [Deborah] introduces them as mom and dad. [Charlie] calls them mom and dad (for the record he calls every female mom and also calls [his] biological father dad).
148. The children have been placed in the current foster home since October of 2016. During that time, both children have demonstrated vast improvement. [Charlie] is talking in sentences and his eating issues appear controlled. [Deborah] is growing academically and learning to control some of her emotional behaviors. The foster parents are able to set appropriate boundaries.
149. The children react positively when seeing the foster parents. [Charlie] is demonstrating anxiety when separating from the foster parents which has not previously been seen.
150. [Deborah] has written letters of affection to the foster parents similar in tone to those loving letters written to her parents.
151. It is necessary in order to promote the healthy and orderly physical and emotional well-being for the juveniles that a permanent plan of care be made at this time.
152. It is in the best interest of the children that the parental rights of the mother and father be terminated.
Respondents contend that, because there was evidence that the children had a strong bond with and affection for respondents, and that Deborah had said she wished to return to respondents' home, it was an abuse of discretion for the trial court to terminate their parental rights. They argue that termination of their parental rights is inconsistent with the constitutional and statutory policies that acknowledge the presumptive right of natural parents to the custody and care of their children and the importance of avoiding unnecessary or inappropriate severance of the parent-child relationship.
A natural parent has a constitutionally-protected interest in the companionship, custody, care and control of his or her child; however, this interest may be forfeited if the parent is unfit or engages in conduct inconsistent with shouldering the responsibilities of parenting, such as neglecting the child. Price v. Howard, 346 N.C. 68, 79, 484 S.E.2d 528, 534 (1997). Moreover, our Juvenile Code recognizes that, although parents have an interest in the care and custody of their children and should not be unnecessarily or inappropriately separated from their children, "the best interests of the juvenile are of paramount consideration by the court and ... when it is not in the juvenile's best interest to be returned home, the juvenile will be placed in a safe, permanent home within a reasonable amount of time." N.C. Gen. Stat. § 7B-100(5) (2015).
As discussed above, the "trial court's determination of the child's best interests is reviewed only for an abuse of discretion." In re Anderson, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002) (citation omitted). A court may be reversed for abuse of discretion only if the appellant can show that its ruling "was so arbitrary that it could not have been the result of a reasoned decision." White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). In the present case, we conclude that the trial court's findings of fact reflect a careful consideration of the factors listed in N.C. Gen. Stat. § 7B-1110(a), including the strong bond that respondents have with the children. However, as we acknowledged in In re C.L.C., 171 N.C. App. 438, 448, 615 S.E.2d 704, 709 (2005), aff'd, review improvidently allowed, 360 N.C. 475, 628 S.E.2d 760 (2006), although the strength of the parental bond is one factor the court should consider, the court is entitled to give greater weight to other factors, which may include the parent's inability to rectify the conditions that led to the removal of the child from the home or the parent's failure to comply with the case plan.
In the case at hand, the court incorporated the adjudicatory findings of fact into its dispositional findings of fact, including respondent-father's admission that he had failed to complete most of the goals in his case plan, and respondent-mother's admission that it was unsafe for the children to be in the home when she or the father are using drugs, and that respondents' substance abuse has a negative impact on their daily functioning and ability to parent appropriately. In finding of fact number 131, the court found that:
[t]he issues that [respondents] continue to encounter would produce an unhealthy and unsafe environment for their children. [Respondents] continue to test positive for illicit substances, cannot demonstrate the ability to appropriately budget funds so as to meet the needs of the juveniles despite having sufficient funds, do not consistently attend appointments so as to demonstrate their ability to assure children would attend appointments, demonstrate poor [judgment] and [the court has] concerns [about] appropriate interaction during visitation.
Considered together with the findings regarding the likelihood of adoption, how well the children are doing and how their needs are being met in the foster home, these findings provide a rational basis for the court's determination that it is in the juveniles' best interests to terminate respondents' parental rights.
We hold that the court did not abuse its discretion by terminating respondents' parental rights. We affirm the order.
AFFIRMED.
Report per Rule 30(e).
Judges BRYANT and STROUD concur.

For ease of reading and to protect the children's privacy, we refer to them by the pseudonyms Charlie and Deborah.