IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-47-2

Filed 7 May 2025

Pitt County, Nos. 19 JA 107, 19 JA 108

IN THE MATTER OF: T.S., III & M.S.

Appeal by Respondent-mother from order entered 5 October 2023 by Judge Wendy S. Hazelton in Pitt County District Court. This case was originally heard in the Court of Appeals 21 November 2024. *See In re T.S. III & M.S.*, __ N.C. App. __, 909 S.E.2d 758 (2024). Upon remand from the Supreme Court of North Carolina.

*Miller & Audino, LLP, by Jay Anthony Audino, for petitioner-appellee Pitt County Department of Social Services.*

*GAL Appellate Counsel Matthew D. Wunsche for guardian ad litem.*

*Anné C. Wright for respondent-appellant mother.*

TYSON, Judge.

This case was remanded to this Court by order from the Supreme Court of North Carolina for reconsideration in light of *In re K.C.*, 386 N.C. 690, 909 S.E.2d 170 (2024). We dismiss these appeals.

## I. Background

This matter challenges the guardianship disposition of three-year-old T.S., III ("Thomas") and four-year-old M.S. ("Marcus") to their paternal grandmother ("Grandmother"). The background is taken from this Court's prior opinion:

> The Pitt County Department of Social Services (DSS) filed petitions on 26 July 2019 alleging three-year-old Thomas

and four-year-old Marcus were neglected juveniles. After noting Respondent-mother's history with DSS dating back to September 2013, DSS alleged it had received two recent reports: a report on 16 April 2019 claiming the children were left alone in the care of their seven-year-old sibling, A.S., while Respondent-mother picked up her boyfriend from jail, and a report on 4 June 2019 alleging improper care and supervision. Although the underlying juvenile neglect proceeding also involved Thomas and Marcus' siblings A.S. and I.S., the order on appeal only addresses the guardianship disposition of Thomas and Marcus.

After investigation of the April report, Respondent-mother was arrested for four counts of misdemeanor child abuse or neglect. Thomas and Marcus were placed with their maternal aunt in a temporary safety placement. DSS also alleged the children had consistently missed routine health appointments and were not being treated for possible developmental delays.

On 30 December 2019, the trial court entered an order adjudicating Thomas and Marcus as neglected juveniles and placed them with their paternal aunt and uncle. The trial court found Respondent-mother had made progress on her case plan by completing a mental health and substance abuse assessment by "taking online classes[,]" but she had not attended her psychological evaluation appointment, had been arrested for failing to appear for the misdemeanor child abuse charges, was unemployed, had only attended one therapy appointment, and she had not maintained visitation with the boys.

The court ordered Respondent-mother to participate in mental health treatment, complete a parenting program, submit to a substance abuse assessment, receive substance abuse treatment, follow the terms of her parole, and obtain and maintain stable employment. The trial court awarded joint legal custody of Thomas and Marcus to their aunt and uncle and Respondent-mother and further awarded Respondent-mother supervised visitation with her boys for one hour per week.

The trial court entered a three-month review order on 25 March 2020, in which it found Respondent-mother had failed to complete substance abuse treatment, maintain her sobriety, complete a psychological evaluation, and consistently visit with the children. As a result, the court continued Thomas and Marcus' temporary placement with their aunt and uncle.

The trial court entered a permanency planning order on 6 August 2020, maintaining the boys' placement with their aunt and uncle due to Respondent-mother's visitation issues and failure to comply with her case plan. The court set a primary plan of custody with a relative and secondary plan of reunification and again the court ordered respondent-mother to complete her case plan requirements.

The trial court entered another permanency planning order on 30 March 2021, in which it found Respondent-mother had continued to make progress on elements of her case plan, but she had not completed a mental health assessment or taken a recent drug test, and she was not regularly visiting with the children. The court changed the primary permanent plan to guardianship with a relative with a secondary plan of custody with a relative and awarded guardianship of Thomas and Marcus to their aunt and uncle. The court directed no further review hearings would occur unless sought by the motion of a party and relieved DSS, the guardian *ad litem* (GAL), and Respondent-mother's appointed counsel of further duties

On 22 August 2022, the trial court entered nonsecure custody orders removing the boys from their aunt and uncle's home because "[t]he Juvenile[s were] slapped by the Guardian/Uncle eight times for acting up at the Grandmother's house[,] [and] [t]he Guardian/Aunt does not allow the Juveniles to meet with their (sic) therapist without her present." The court placed the boys with paternal Grandmother. In orders signed on 8 September 2022, but not filed until over four months later on 9 January 2023, the trial court dissolved paternal aunt's and

uncle's guardianship.

The trial court conducted a permanency planning hearing on 8 December 2022. In the order from that hearing, the court found Respondent-mother had continued to make progress with her case plan. She had obtained adequate housing and completed a mental health assessment, but she had not secured verified employment, was not consistently attending visitation or family therapy, and had tested positive for cocaine and marijuana. The court set a primary permanent plan of reunification with a secondary plan of guardianship.

The trial court held the next permanency planning hearing on 15 June 2023. In its order from the hearing, the court found Respondent-mother had continued to make progress on her case plan, including obtaining consistent employment, attending college to study business, and completing a comprehensive clinical addendum. However, the court noted Respondent-mother had failed to follow the recommendations of prior assessments and had failed to use additional visitation provided to her. The court changed the primary permanent plan to guardianship with a relative with a secondary plan of reunification.

Another permanency planning hearing was held on 14 September 2023. Prior to the hearing, DSS and the GAL submitted reports requesting that the trial court grant guardianship to Grandmother. During the hearing, Respondent-mother's counsel specifically argued it was premature to consider guardianship in light of her recent progress.

The trial court entered a permanency planning order on 5 October 2023, in which it found "[b]y clear, cogent, and convincing evidence" Respondent-mother was unfit and was acting inconsistently with her constitutionally-protected status as a parent. The court granted guardianship of Thomas and Marcus to Grandmother based on its conclusion that such placement would be in their best interests. Respondent-mother appeals.

*Id.* at __, 909 S.E.2d at 761-62.

This Court vacated the permanency planning order awarding guardianship to Grandmother and remanded. *Id.* at __, 909 S.E.2d at 768. The district court's findings of fact failed to support the trial court's conclusion Respondent-mother "is unfit or acted inconsistent with . . . her constitutionally protected status [at that time] is nevertheless required, even when a juvenile has previously been adjudicated neglected and dependent." *Id.* (citation omitted).

The matter was vacated and remanded to the trial court for further findings and proceedings. *Id.* (citation omitted).

Petitioner petitioned for discretionary review pursuant to N.C. Gen. Stat. § 7A-31 (2023), and the guardian *ad litem* joined the petition for review. The Supreme Court allowed the petition without opinion "for the limited purpose of vacating the Court of Appeals decision below, . . . , and remanding the matter to that court for reconsideration in light of *In re K.C.*, No. 142A23 (N.C. Dec. 13 (2024))."

## II. *In re K.C.*

Durham County DSS had filed a petition alleging the juvenile to be a neglected juvenile on 25 August 2020. *In re K.C.*, 288 N.C. App. 543, 544, 887 S.E.2d 108, 110 (2023), *rev'd*, 386 N.C. 690, 909 S.E.2d 170 (2024). More than a year later, the trial court entered an order adjudicating the juvenile to be a neglected juvenile. *Id.* at 544, 887 S.E.2d at 111. At the dispositional hearing the trial court "contemplated removal of the child from the non-offending parent" for the first time. *Id.* The trial court

entered "a limited order placing [the juvenile] in the temporary custody of her paternal aunt and uncle." *Id.*

The trial court entered a

> formal disposition order on 8 February 2022, wherein it formally placed [the juvenile] in the 'temporary custody' of her paternal aunt and uncle and ordered [the r]espondent to complete a domestic violence program for perpetrators, refrain from physically disciplining [the juvenile], maintain contact with the social worker, maintain stable housing, maintain employment and income, refrain from using illegal substances, sign all necessary releases to allow the social worker to access service records, and ensure that all service providers have copies of the trial court's orders.

*Id.* at 545, 887 S.E.2d at 111  The respondent appealed arguing "the trial court erred in placing the juvenile in the temporary custody of the paternal aunt and uncle where its determination that he acted inconsistently with his constitutional rights as a parent was not supported by the evidence or the findings of fact." *Id.*

This Court held this argument was properly preserved for review because the respondent had "opposed DSS's recommendation" to place the juvenile with the paternal aunt and uncle. *Id.* Respondent-mother also challenged findings to support this conclusion. This Court held the finding was unsupported and disregarded them. *Id.* at 550, 887 S.E.2d at 114. This Court noted: "There were no allegations in the petition or findings in the adjudication order that [the respondent], the non-offending parent, has neglected the child, is unfit, or has acted inconsistently with his paramount constitutional right to custody of his child." *Id.*

This Court reversed the district court holding: "the findings of fact are insufficient to support the trial court's conclusion that [the r]espondent acted inconsistently with his paramount constitutionally protected status as a parent." *Id.*

DSS petitioned the Supreme Court of North Carolina, which allowed discretionary review on an additional issue: "Whether respondent properly preserved this constitutional issue for appellate review." *In re K.C.*, 386 N.C. at 694, 909 S.E.2d at 174 (citation omitted). Two Justices observed, "In a case where, until supplemental briefing requested by this Court, no party argued to this Court that Father [had] waived his constitutional challenge and contrary to our settled practice, the majority steps into the role of advocate and makes a 'better' argument for a party." *Id.* at 699-700, 909 S.E.2d at 177 (Riggs, J., dissenting). The Supreme Court also instructed the parties to submit supplemental briefs on a new additional issue "Whether the Court of Appeals' reliance on its decision in *In re B.R.W.*, 278 N.C. App. 382, 399, 863 S.E.2d 202 (2021), conflicts with this Court's holding in *In re J.N.*, 381 N.C. 131, 133, 871 S.E.2d 495 (2022)."

The Supreme Court's opinion first recognized and cited the Supreme Court of the United States' holding in *Quilloin v. Walcott*, 434 U.S. 246, 255, 54 L.Ed.2d 511, 519 (1978) reaffirming: "[F]reedom of personal choice in matters of family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment[,]" and there is "little doubt that the Due Process Clause would be offended if a State were to attempt to force the breakup of a natural family, over the objections of the

parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest."

Our Supreme Court examined and also reaffirmed "a parent's constitutionally protected paramount interest in the companionship, custody, care, and control of his or her child," and recognized the parent is presumed to be fit and to act in his and her child's best interest. Any third party to the parent-child relationship must overcome those presumptions by the requisite and heightened burden of proof to interfere or meddle. *In re K.C.*, 386 N.C. at 695, 909 S.E.2d at 174 (citing *Price v. Howard*, 346 N.C. 68, 79, 484 S.E.2d 528, 534 (1997)). Mere allegations of a purported statutory ground and even some evidence thereof are insufficient to overcome presumptions of parental fitness and of acting in the best interests of her children and interfere with the paramount and constitutionally-protected parental status. *Id.*

The Supreme Court also acknowledged the General Assembly's stated public policy in asserting the "core purpose of these statutes is to provide procedures for the hearing of juvenile cases that assure fairness and equity and that protect the constitutional rights of juveniles and parents," and implements processes and procedures with the statutory goals for the child to be reunified with their parent(s). *Id.* (citing N.C. Gen. Stat. § 7B-100(1) (2023)).

The Supreme Court further "recognized that there might be rare circumstances in which the provisions of the Juvenile Code are insufficient to protect the constitutional rights of parents. . . . In these rare cases, even if the Juvenile Code

authorizes the trial court to remove a child from a parent, the court may not do so because the United States Constitution prohibits it." *Id.* at 696, 909 S.E.2d at 175 (citations omitted).

The Supreme Court reviewed whether preservation of the paramount constitutional rights of parents are or could be implicated by reviewing *In re J.N.*, 381 N.C. at 134, 871 S.E.2d at 498, wherein the appellant had argued the parent expressly opposed DSS' recommendation of guardianship and had further argued "reunification would be the more appropriate plan." *In re K.C.*, 386 N.C. at 697, 909 S.E.2d at 176 (citation omitted).

The Court states that where a parent:

> who merely argues against a child's removal, or against the child's placement with someone else, does not adequately preserve the constitutional issue. To preserve it, the parent must inform the trial court and the opposing parties that the parent is challenging the removal on constitutional grounds and [to] articulate the basis for the constitutional claim.
>
> This preservation requirement is necessary for a crucial reason. As noted above, the argument is essentially a claim that the Juvenile Code is unconstitutional as applied to that parent. After all, the argument applies only when the Juvenile Code *authorizes* the removal of the child from the parent's care, but the Constitution nevertheless *prohibits* it. Thus, the parties opposing the parent's argument must be given notice of the constitutional challenge so that they can present evidence to rebut it. This evidence, by its nature, may be different from the evidence those parties present to establish grounds for removal under the Juvenile Code —after all, the constitutional claim can prevail only in rare cases where the evidence that is

> sufficient to satisfy the Juvenile Code nevertheless is insufficient to comply with the constitutional criteria.
>
> Moreover, because of this need to provide notice to the opposing parties, the preservation requirement applies even if the trial court addresses the constitutional claim on its own initiative in its order. A trial court's findings are limited to evidence in the record. Without notice that the parent is asserting a constitutional claim, the opposing parties will not know that they must present evidence that would support the necessary findings to reject the claim.

*Id.* at 697-98, 909 S.E.2d at 176 (citations omitted).

The Supreme Court reversed Court of Appeal's decision in *In re B.R.W.* and its progeny, as being contrary to *In re J.N. Id.* at 698, 909 S.E.2d at 176 ("In sum, the Court of Appeals' preservation analysis in *In re B.R.W.* did not survive our holding in *In re J.N.* To prevent further confusion, we expressly overrule the preservation holding of the Court of Appeals decision in *In re B.R.W.* and the holdings of the resulting Court of Appeals case law that followed it."); *In re B.R.W.*, 278 N.C. App. 382, 397-99, 863 S.E.2d 202, 214-16 (2021).

## III. Analysis

Respondent-mother challenges the guardianship, which awarded Thomas and Marcus to their paternal Grandmother. She argues several of the trial court's findings of fact are unsupported by the evidence and the remaining findings failed to support the court's conclusion either she is unfit as a parent or has acted in a manner inconsistent with her rights to overcome her presumptions of fitness and acting in the best interest of the children to forfeit her constitutionally-protected parental

status.

Respondent-mother never argued her as-applied constitutional right to parent was violated, she only asserted it was "premature" to consider guardianship considering her established progress under DSS' supervisions in recent months to rectify the issues, which led to the minors' removal from the home, and to reunify her with Thomas and Marcus.

This argument was also asserted in *In re J.N.*, wherein the respondent had argued "reunification would be a more appropriate plan" to the district court. *In re J.N.*, 384 N.C. at 604-04, 887 S.E.2d at 835-36 ("the respondents waived appellate review because they did not argue to the district court changing the permanent plan would be "improper on constitutional grounds"). As in the case of *In re J.N.*, Respondent-mother cannot argue for the first time on appeal her as-applied constitutionally-protected parental status was violated. *Id.* Respondent-mother has waived appellate review of this issue in this appeal.

## IV.   Conclusion

Respondent-mother did not argue her constitutionally-protected parental status was violated as applied before the district court. Our Supreme Court's precedent requires Respondent-mother to challenge the interference with and specifically "argue th[e] issue as a violation of a constitutional right." *In re K.C.*, 386 N.C. at 698, 909 S.E.2d at 176; *see In re J.N.*, 384 N.C. at 604-04, 887 S.E.2d at 835-36.  Respondent-mother's constitutionally-protected parental rights to Thomas and

Marcus are not terminated. Respondent-mother's unpreserved as-applied challenges asserted for the first time in this appeal are dismissed. The trial court's order awarding guardianship remains undisturbed. *It is so ordered.*

DISMISSED.

Judges WOOD and GORE concur.